## Case No. 13,610.

### SUMNER v. MOORE.

[2 McLean, 59.] [1]

Circuit Court, D. Ohio. Dec. Term, 1839.

EXECUTION — APPRAISEMENT — SHERIFF'S DEED— COLLATERAL ATTACK—DEATH OF DEFENDANT.

1. A vague levy on land may be rendered certain, by the appraisement, in which it is particularly described.

2. The sheriff's deed being certain, cannot be avoided, collaterally, by a defect in the levy.

3. The deed is the act of the sheriff, and is taken in connection with his return.

4. However irregular a proceeding may be, the title of the purchaser cannot be affected by it, unless the proceeding was absolutely void. If only voidable the title must stand.

[Cited in Howard v. North, 5 Tex. 290; Sydnor v Roberts, 13 Tex. 598.]

5. If an execution be issued on a dormant judgment it is irregular, and the execution may be set aside, on motion: but a title, under a sale, on such execution is good.

6. Where a levy has been made, the sheriff may go on and sell, though the decease of the defendant occur subsequently to the levy. If, however, the defendant die before the levy, the judgment must be revived.

[Cited in U. S. v. Drennen, Case No. 14,-992.]

7. Prior to the act of February, 1824, the venditioni exponas might issue either to the old or new sheriff, either of whom could sell the property levied on.

At law.

[1] [Reported by Hon John McLean, Circuit Justice.]

LEAVITT, District Judge. This is an action of ejectment; and the case is submitted to the court upon a statement agreed upon by the parties. The facts presented in the statement, and the papers to which it refers, on which the plaintiff claims title to the premises in controversy, are these: John Brown, then of Scioto county, Ohio, being seized in fee of the land in question, on the 23d of October, 1823, made his will, devising his real estate to his wife, Hannah Brown; and, dying soon after, his will was duly admitted to probate in said county. Hannah Brown, on the 16th of February, 1825, made her will, devising her real estate to her grand-daughter, Minerva E. B. Lucas; and died some time prior to the 2d of August, 1827; and her will was, also, duly admitted to probate in said county. Minerva E. B. Lucas, since the death of Hannah Brown, has intermarried with, and is now the wife of, the lessee of the plaintiff. The defendant claims title under a deed from Jacob P. Noel, who was a purchaser of the premises at sheriff's sale. The facts connected with this sale, as presented to the court, are as follows: At August term, 1822, of the court of common pleas of Scioto county, two judgments were rendered in said court against the said John Brown; one in favor of John Smith, and one in favor of Peleg O. Whitman. Several writs of fi. fa. et lev. fa having issued on said judgments, on which no levy was made, new writs issued 21st July, 1823; on these the sheriff returned that he had levied on 48 acres and 89 hundredths, part of fractional sections 13 and 14, township 1, range 21; and part of southeast quarter of section 10, township 1, range 21; and, also, 72 acres and 77 hundredths, part of southeast quarter, section 10, township 1, and range 21; which are the lands claimed by the plaintiff. After several writs of venditioni exponas had issued, some of which were returned, "Not sold for want of bidders," and others, "Not sold for want of time," on the 4th of December, 1824, new writs of ven. ex. issued; one of which was returned by the sheriff. "Defendant dead"—the other was not delivered to the sheriff. No other process was taken out till the 27th of January, 1830; when a vendi. issued on Whitman's judgment, and the sheriff returned thereon, a sale of the 72 acres and 77 hundredths tract, to one Elias K. Hitchcock; and, as to the other tract. "Not sold for want of bidders." At the March term, 1830, of the common pleas of Scioto county, the proceedings of the sheriff were submitted to the court; the sale was confirmed, and a deed ordered to be made to the purchaser. It also appears that the sale and appraisement of said tract was subsequently set aside by the court, and a new appraisement ordered. And on the 26th of July, 1832, other writs of vendi. ex. issued, which were placed in the hands of the then sheriff of Scioto county, return-

able to September term, 1832; and at that term, the sheriff returned a new appraisement of the land, describing it by metes and bounds; and, also, returned that he had sold the lands to Jacob P. Noel. At the same term a motion was made for the confirmation of said sale; and, the motion having been entered on the journal of the court, was continued till the succeeding term. At that term the sale was confirmed by the court, and an order entered requiring the sheriff to convey to Noel, the purchaser.

It is insisted by the counsel for the plaintiff, that the proceedings, on the judgment against Brown are void, on several grounds; and that, therefore, the sheriff's deed vests no title in Noel.

First: It is contended that the levy is a nullity, on account of the vagueness and uncertainty in the description of the land levied on. It seems to be a well settled principle of law, that a levy must describe the land with such certainty as to apprize the purchaser of what he is buying, and enable the sheriff to put him in possession of the specific property sold And it is clear that the levy in question, in this respect, is defective. But this is a defect which may be supplied. 3 Ohio, 274; 5 Ohio, 524. And the court is of opinion that the second appraisement of the land, in which it is described by metes and bounds, cures the defect in the levy. The sale was made, and confirmed by the court, under this appraisement; and the deed was ordered to be made with reference to it. But, if this defect in the levy had not been thus supplied, it could not be invalidated in this collateral manner. The authorities on this subject fully support the position, that after a proceeding of this nature, not absolutely void in itself, has been examined, and adjudicated upon, by a court having jurisdiction of the matter, it cannot be inquired into, except in some direct proceeding instituted for that purpose. The statute of Ohio, in force when the proceedings, under the executions referred to, passed in review before the court of common pleas of Scioto county, required the court carefully to examine them, and, if satisfied, that the sale had been conducted according to law, to cause the clerk to make an entry on the journal to that effect. This was done, in relation to the proceedings in question, with more than usual deliberation. The motion for the confirmation was made and entered upon the journal, at September term, 1832, stating the appearance of the parties by counsel; it was continued till the next term, and then disposed of by the entry of an order confirming the sale, and directing the sheriff to execute a deed. This inspection of the proceedings under the executions, and the judgment of confirmation which followed, are clearly judicial acts, within the jurisdiction of the court, which can not be collaterally drawn in question. In the case of Thompson v. Tolmie, 2 Pet. [27 U. S.] 162, the de-

fendant claimed title to the premises by virtue of a purchase at a commissioners' sale, under the law of Maryland, relative to the division of intestate estates, in certain cases. It appeared that the statute had not been complied with, as to several important particulars. But the court sustained the sale, and laid down the law applicable to the case to be: that where proceedings are collaterally drawn in question, and it appears, upon the face of them, that the subject matter was within the jurisdiction of the court, they are voidable only; and that errors and irregularities, if any exist, are to be corrected by some direct proceeding, either before the same court, to set them aside, or in an appellate court. And in the case of Vorhees v. Bank of U. S., 10 Pet. [35 U. S.] 471, the question was, whether certain proceedings, under the attachment law of Ohio, were to be regarded as void, on the ground of irregularity. There had been an order of court for the sale of property; a sale had been made, and was confirmed by the court; and, although it appeared that several important requisitions of the statute had not been complied with, the court held that the sale could not be impeached by any indirect proceeding. The principle is laid down by the supreme court, that where a court has performed a judicial act, within the scope of its jurisdiction, the regularity of its proceedings cannot be collaterally impugned, especially where the rights of innocent purchasers are involved. Upon the authority of these cases, and of others, in which analogous principles are sanctioned, the court could not hesitate to sustain the levy upon the real estate of Brown, if its defects had not been supplied by the return of the new appraisement.

Second: It is strenuously urged by the plaintiff's counsel that, as there was a suspension of execution upon the judgments, from December, 1824, till January, 1830, a period exceeding five years; and no revival of the judgments by scire facias, all process subsequently issued, and all the proceedings had thereon, were wholly void. The principles settled in the cases already referred to, apply also to this exception. However irregular the proceedings may have been, the court cannot, in this form, correct those irregularities. They have been submitted to, and adjudged of, by a tribunal clothed with power by the statute to pass upon them. The court has caused it to be entered upon its journal, that those proceedings have been conducted agreeably to law; the sale by the sheriff has been pronounced to be a legal and valid sale; and an order has been entered authorizing the sheriff to make a deed to the purchaser. Upon the faith of this procedure the purchaser has paid his money, and has entered into the possession of the property. Can he now be disturbed in that possession? In the case before referred to—Vorhees v. Bank of U. S. [supra]—the court say: The purchaser is

not bound to look beyond the decree, when executed by a conveyance, if the facts, necessary to give jurisdiction, appear on the face of the proceedings; nor to look further back than the order of the court. And, in [Thompson v. Tolmie], 2 Pet. [27 U. S.] 163, it is said, if the jurisdiction was improvidently exercised, or, in a manner, not warranted by the evidence before it, it is not to be corrected at the expense of the purchaser, who had a right to rely upon the order of the court, as an authority emanating from a competent jurisdiction. And, again, where a court has jurisdiction of a cause, it has a right to decide every question that arises in the cause; and, whether the decision be correct or not, its judgment, until reversed, is regarded as binding in every other court. Id. 169. The effect of an execution issued upon a judgment, after it has become dormant by lapse of time, has been a subject of frequent adjudication; and it has been settled that, though an execution thus issued is irregular, it is not a nullity; though voidable, not absolutely void. In the case of Jackson v. Rosevelt, 13 Johns. 102, the language of the court is: The objections that it (the sale) took place long after the return day of the execution, and that it did not appear that a levy had been made before the return day, and that the execution had not been issued until more than a year and a day after judgment, can not affect the sale. And, in the same case, referring to 8 Johns. 361, it is said, this court decided that, in an action of ejectment against a purchaser under a sheriff's sale, the regularity of the execution could not be questioned; and that if an execution issues after a year and a day, without a revival of the judgment by sci. fa., it is only voidable at the instance of the party against whom it issued. 3 Caines, 270. In Jackson v. De Lancey, 13 Johns. 550, a scire facias had issued to revive a judgment, but being served on a wrong party, the service was held to be a nullity. It was the same thing, says the chancellor, as if execution had issued, and the lands been sold, on a dormant judgment, without any revival by scire facias. Still (he continues,) I take the law to be that even the omission altogether of the scire facias, will not, as of course, render void a sale under execution. An execution issued on a judgment, after a year and a day (the time limited in the state of New York, within which an execution must issue, or the judgment becomes dormant) without revival, has been held to be voidable only, and a justification to the party under it, until set aside. And a case is referred to by the chancellor, reported in Heister v. Fortner, 2 Bin. 45, in which it was held, that a judgment revived by scire facias, after a year and a day, upon one nihil only, which is the same as no summons, may be set aside for irregularity, or reversed on error; but the irregularity can not be noticed collaterally

in another suit. In Blaine v. The Charles Carter, 4 Cranch [8 U. S.] 328, a ship had been sold under executions issued within ten days after judgment, contrary to the express prohibition of the act of congress; but no writ of error was taken out; and the court held, that if the executions were irregular, the court, from which they issued, ought to have been moved to set them aside. "They were not void, because the marshal could have justified under them; and, if voidable, the proper means of destroying their efficacy had not been pursued." And in another case ([Wheaton v. Lexton] 4 Wheat. [17 U. S.] 506) involving the validity of a marshal's sale of real estate, under an execution, the language of the court is: "The purchaser depends on the judgment, the levy, and the deed. All other questions are between the parties to the judgment and the marshal." This doctrine has been expressly sanctioned by the supreme court of Ohio. In the case of Green v. Cutright, Wright, 738, it is said by the court: "The party against whom process of execution issues, after it has lain five years, may have it set aside on motion, and put his adversary to his scire facias to revive the judgment; but the writ, so issued, is not void." And the case of Allen's Lessee v. Parish, 3 Ohio, 190, is regarded as sustaining the same doctrine. The question there was, whether a sale of lands upon execution is valid without an appraisement; and it was held that this irregularity did not render the sale void, and that the sheriff's deed, vested in the purchaser, not being a party to the judgment, a good and valid title to the lands sold under the execution. In the same case, the court recognizes it as the doctrine of the English courts, that any irregularity in the proceedings of a sheriff, in selling, will not affect the purchaser's rights, provided the sheriff had an execution authorizing him to levy, and did, in fact, levy and sell.

Third: We proceed now to the examination of the third exception taken to these proceedings by the plaintiff's counsel, namely, that after the death of Brown, the judgment debtor, there was a suspension of all right to proceed upon the judgments; and that all the process issued, and proceedings had, subsequent to his death, were mere nullities. On this point, the doctrine seems to be well settled, that an execution is an entire thing; and that, if land be levied on, in the lifetime of the judgment debtor, the sale may proceed after his death. The levy upon the property, by execution, is regarded, in the eye of the law, as an appropriation of it for the payment of the judgment, and vests in the judgment creditor an interest, which is not affected by the death of the judgment debtor. If the execution be levied after the death of the defendant, it is clear that such levy is a mere nullity; and, for the obvious reason, that the death of the party, by operation of the law, brings about

a change in the ownership of the property. In the case of Massies' Heirs' Lessee v. Long, 2 Ohio, 290, this subject is very fully investigated, and the court consider it as well settled, that if the defendant die, after execution is sued out and levied, the execution proceeds as if the death had not taken place. This principle is indisputable; and, applied to the case before the court, is conclusive against the plaintiff, on the last mentioned point.

Fourth: Another objection is taken to the proceedings in question. It is contended that the writs of ven. ex., issued subsequently to the expiration of the official term of the sheriff who made the levy, should have been executed by him, and not by the new sheriff. It may be remarked here, that in no possible aspect of the case, could it make any difference, so far as the rights of the judgment debtor are concerned, whether the process was executed by the sheriff, in office when the levy was made, or by his successor. In the opinion of the supreme court of Ohio, Fowble v. Rayberg, 4 Ohio, 56, prior to the act of February, 1824, the sale would be legal, whether made by the old or new sheriff. Until the enactment of that law, the practice was variant in different parts of the state. That statute, however, expressly provides, "that no venditioni exponas shall hereafter be directed to, or executed by, any sheriff whose term of office may have expired," &c. As this provision was applicable to, and governed the proceedings in the case before the court, it is clear there was no irregularity in placing the writs of vendi. in the hands of the new sheriff for execution.

The exceptions to the defendant's title being overruled by the court, judgment is accordingly entered in his favor.