JOHN S. SYDNOR AND OTHERS v. JOHN S. ROBERTS AND ANOTHER.

There is a marked distinction between that which confers the power to do a certain act, and the rules which direct and regulate the mode of its exercise. If the former be wanting, the act done is a nullity and is to be taken as if nothing had been done : but if the latter be not strictly pursued, the acts done will not necessarily be void ; or, if void as to some persons and purposes, they will not necessarily be so as to all persons and all purposes, but only as to the person who may have the right to avoid them and will exercise that right in the proper manner and at the proper time.

Quere, whether there should be a return of nulla bona, or no property, in the county where judgment is obtained, before sending execution to another county ? Ad-

mitting that there should be such a return, it goes merely to the mode of exercising the power which the judgment confers, of issuing execution ; and if the execution be sent to another county without such previous return, it is at most, an irregularity, and not of a character to invalidate the title of a *bona fide* purchaser under such execution.

Although executions may not have been regularly issued from Term to Term, and more than a year may have elapsed between the first and second executions, it is but an irregularity, not of a character to invalidate the title of a *bona fide* purchaser under a subsequent execution.

The purchaser of land at a Sheriff's sale is not bound to examine into the regularity of the proceedings by which the execution was obtained ; and however irregular a proceeding may be, the title of the purchaser cannot be affected by it unless the proceeding was absolutely void.

Where execution is issued to another county, the title of the purchaser under such execution is not affected by the fact that the defendant had ample property to satisfy the judgment in the county where the judgment was obtained, which he had failed to point out when called upon.

The title of a purchaser under execution sent from another county, is not affected by the fact that such execution was in the ordinary form of a *pluries* execution, and not in the form of a *testatum*.

Where there are irregularities in the sale of property under execution, and the plaintiff in execution or his attorney is the purchaser, the sale may be set aside by the defendant in execution by a proceeding having that object directly in view, commenced within a reasonable time ; but subsequent purchasers, having no notice of any fraud on the part of the plaintiff or his attorney, and purchasing before the commencement of proceedings to set aside the rule, will acquire a good title.

A *bona fide* purchaser for a valuable consideration will be protected whether he purchased from a fraudulent grantor or a fraudulent grantee.

The proper construction of the execution law of 1842 (Hart. Dig. Art. 1327, 1340, 1842) where appraisement was allowed, is this, that the defendant was first entitled to point out property ; if he failed to do so, the Sheriff was required to levy in a certain order, and if the property did not sell for two thirds of the appraised value, there was no sale"; after the expiration of three months the same process to be repeated, and if again no sale, then after three months the plaintiff in execution was entitled to point out, and the property was required to bring its full appraised value, or no sale. Where the plaintiff pointed out the second levy, and the property was sold for two-thirds of its appraised value, it was held that the plaintiff having then had no right to point out, the Sheriff was not bound to have received his designation, but his having done so, did not invalidate the levy, nor require the property to bring its full appraised value, and the sale was sustained.

Appeal from Galveston. The appellees Roberts and Phillips instituted two actions of trespass to try title in the District Court of Galveston county, on the 25th October, 1849 ; one against Robert Moffatt to recover lot No. 9 in block 680,

the other against Benjamin S. Parsons to recover lots No. 4, 5 and 6 in the same block in the city of Galveston.

The original defendants were the tenants in possession, and at the ———— Term 1848, the appellants Sydnor, Cobb and Powers, entered themselves defendants in the room of the tenants, answered, and the two suits were consolidated. At the Fall Term 1849 there was trial and judgment for the plaintiffs in the Court below, now appellees ; and the defendants appealed.

The evidence of plaintiffs' title was,

1st. The patent from the Republic of Texas to M. B. Menard for a league and labor of land on the east end of Galveston Island, on which the city of Galveston is situated.

2d. An Act of Congress of the Republic, approved Feb. 5th, 1841, to incorporate the Galveston City Company, with the power, among others, to hold and convey real estate. Sec. 1st. its affairs to be managed by a board of five Directors, three of whom could act.

3d. A deed made June 1, 1843, from M. B. Menard to Love, Jones, Menard and Williams, the Board of Directors of the Galveston City Company, conveying the said league and labor of land.

4th. A deed made Feb. 5, 1841, from Love, Jones, Menard and Williams, the actual and acting Board of Directors of the Galveston City Company, to said Roberts and Phillips, conveying the lots sued for.

5th. It was agreed that the original defendants Moffatt and Parsons claiming under Sydnor, &c., were in possession respectively of the premises, as charged in the petition, on the 1st January, 1847, and had remained so to the time of bringing the suits ; also proof of possession from February 1st, 1847.

The pleadings and evidence of the defendants Sydnor and others were as follows: On the 24th November, 1847, they pleaded not guilty of the trespass and ejectment charged. On the 12th December, 1848, they amended their answer, and

alleged specially that they had purchased the lots or parcel of ground sued for from Winston and wife, who purchased from R. P. Jones, who purchased from C. M. Gould, who purchased from H. M. Smyth, Sheriff of Galveston county, referring to the several deeds ; that the Sheriff of Galveston had sold the lots by virtue of two certain judgments against the plaintiffs and one George Allen, rendered in Nacogdoches county, and of two executions issuing thereon, transcripts of which, on file, were also referred to ; that defendants had purchased and paid a full consideration for said lands long subsequent to the Sheriff's sale, without notice of any claim, right or title on the part of the plaintiffs.

On the same day, plaintiffs amended their petition, charging that the pretended judgments, executions and Sheriff's sale were null and void, and that no legal and sufficient title to the premises was held by defendants in virtue thereof.

Defendants' evidence of title was, 1st, two judgments recorded in the District Court of Nacogdoches county against Roberts, Philips and Geo. Allen, in May, 1841.

2d. An execution on each of these judgments issued to Nacogdoches county June 26, 1841, endorsed "re-issued Dec. 23, 1841, R. Parmlee, C. D. C.," returned April 8th, 1842, by the Sheriff in substance as follows :  Called on Roberts and Phillips, no property pointed out ; called on C. M. Gould, plaintiffs' attorney, and ordered to stay further proceedings until further orders.  Endorsed "Re-issued February 25th, 1843, R. Parmlee, C. D. C."

3d. An *alias* execution on each judgment to Nacogdoches county, July 17, 1843, which were returned by the Sheriff, levied on the plantation of John Durst on the Angelina river, containing 2600 acres, appraised at 8,500 dollars, offered for sale, but no sale for want of bidders.

The return on one of these executions showed that the property was "levied on as the property of Roberts and Phillips, pointed out by Charles S. Taylor, defendants' attorney and plaintiffs' attorney."

The return on the other showed that the property was levied on as the property of John Durst, pointed out by Charles S. Taylor, attorney for John Durst.

4th. A *pluries* execution on each judgment issued December 19, 1843, to Galveston county, endorsed "*pluries fi. fa.* with appraisement." They were levied on the lots in controversy, as the property of Roberts and Phillips, pointed out by the attorney of the plaintiffs in execution, advertised, the sale postponed a month; advertised again, appraised and sold at two-thirds of the appraised value, and purchased by Charles M. Gould, and the Sheriff's return stated that the purchase money was receipted for by Charles M. Gould for Kaufman & Gould, attorneys for plaintiff.

The Sheriff's deed on its face specified that the property was pointed out by plaintiffs' attorney, showed the amount of the appraisement, and the amount of the bids, and that the sale was for only two-thirds of the appraised value, and purchased by Charles M. Gould.

The judgments, executions and Sheriff's returns were admitted in evidence by the Court, but the Sheriff's deed and the subsequent conveyances were ruled out.

Verdict and judgment for the plaintiffs.


*R. H. Howard*, for appellants. The Court erred below in refusing to admit the deed of the Sheriff of Galveston county as evidence of title for defendants. The deed of the Sheriff ought clearly to have been admitted because,

1st. It was made in pursuance of a valid and subsisting judgment against the plaintiffs to this suit, and in obedience to an execution regular upon its face. (Wheaton v. Sexton, 4 Wheat. R. 503.)

2d. It was a deed made by the Sheriff in obedience to a mandate which he was compelled to obey. (7 J. J. Marsh. 150; 2 Bibb, 201, 518; 2 Id. 216; 4 Id. 332.) If this was a process under which the officer could justify in an action of

trespass, it passed the title to the purchaser. (Jeanes v. Wilkins, 1 Ves. Len. R. 194; Blaine v. the ship Charles Carter, 4 Cranch, 127.)

Admitting the proceedings to have been irregular, plaintiffs could not attack them in the collateral action of ejectment, but his proper remedy was to have moved the Court from which they issued to have set them aside. (4 Cranch, 127 ; 3 Wash. C. C. R. 546 ; 16 Johns. R. 126 ; 16 Id. 574 ; 8 Id. 364 ; 13 Id. 101, 463.)

These authorities and many others which might be cited go fully to the point, that where there is a regular and valid judgment, no defect in the execution or sale will be permitted to be shown, except upon a direct motion for that purpose. This point is fully discussed and decided also in support of these views in the 10th of Peters, 449, Voorhies v. Bank of the United States, and cited by this Court with approbation. (Vide also 1 Hayw. 32 ; Smedes and Marsh, 602.)

*W. P. Ballinger*, for appellees. I. The title of the appellants was insufficient because the executions to Galveston county on which the sale was made were void ;

1st. Because they issued contrary to law.

The right to issue execution to another county depended on the fact, that the defendants did not have property in the county where judgment was rendered. How was it to be ascertained that the defendants did not have sufficient property in the county in which judgment was rendered ?

The statute is not express, in terms, on the subject. But the Common Law which governs, in the silence of the statute, and the evident spirit and policy of the statute itself leave no doubt as to the manner in which the want of sufficient property was to be ascertained and shown. (See Archibald's Practice, 266 ; Tidd's Practice, 929.) The execution must issue in the county in which the venue was laid, and upon a return of *nulla bona* by the Sheriff the plaintiff could have a *testatum* into another county.

The Sheriff is the officer whose official duty it is to ascertain facts respecting the defendants' property. The Clerk is not.

It is confidently maintained that no other construction can be given to the execution law of Texas, than that there must be an execution to the county in which judgment is rendered, returned by the Sheriff that he can find no sufficient property, before execution can be lawfully sent to another county. As to the facts in this case, there is no pretence, that there was any such return, nor is there any pretence that it has been shown *aliunde*. On the contrary, the returns on the executions which issued immediately previous to Nacogdoches county show a levy on property valued at $8,500. That levy was accepted by the Sheriff, and *prima facie* the title was such as to render it a good levy. (Wolford v. Phelphs, 2 J. J. Marsh. 34.) The levy was also accepted by the attorney of the plaintiffs in execution, and the property was given up for levy by the attorney of John Durst. The levy is therefore good. Besides, it does not lie in the mouths of these parties to object to it.

The conclusion cannot be escaped that the executions to Galveston county were not authorized by law. The question, however, whether, being so issued contrary to law they were void or only voidable is one of more difficulty, and turns on one of the most vexed distinctions in the law books. Bacon, in his chapter on " Void and Voidable," (7 Bacon's Abridgment, 64,) says, " A thing is void which was done against law at the very time of doing it, and no person is bound by such an act." All the authorities on this subject are reviewed in the most elaborate and conclusive manner in the case of Woodcock v. Bennett, 1 Cowen, 711, to which case the attention of the Court is especially requested. Page 739, remarking on the distinction between an execution issued a year and day after judgment without *scire facias*, which they decide only voidable, and an execution issued when one of the defendants had died without revivor, the Court say, " In the latter case the act of issuing the execution was not warranted

by law. This forms the substantial distinction between void and voidable process." The irregularity must be in the process itself or in the mode of issuing it. If the state of facts existing at the time the process issued be such as to render it unlawful, that is sufficient. It may appear on the face of the process or by reference to extrinsic circumstances. It is no answer to say that the defendant might have avoided the execution. The objection is that the law forbade the issuing of it. See page 739.

Other cases might be referred to. But in Howard and wife v. North, this Court recognize the same distinction.

The application of this principle shows clearly that the issuance of these executions was not warranted by law, and that the law gave no authority to the officer to issue them.

It is important to understand correctly the jurisdiction of the District Courts of the Republic to send their process beyond the counties for which they were established.

They were Courts of general jurisdiction as to subject matter, but of local jurisdiction as to territory. (Art. 4, Sec. 2 Cons. Rep. Hart. Dig. p. 30 ; 1 Laws Rep. p. 198.)

That the process of Courts similarly organized had no extra territorial force, unless by special law, has been often decided. (Mason v. Rogers, Litt. Ky R. ; Commonwealth v. Caldwell, 2 Bibb, 9; Scott v. Maupin, Hardin's Ky. R. 122 ; People v. VanEps, 4 Wendell, 393 ; Brydie v. Langham, 2 Wash. Va. R. 72 ; Bank Vicksburg v. Jennings, 5 How. Miss. 425 ; Sup. U. S. Digest, " JURISDICTION" No 32, 33, 34; same rule in Illinois, Reed v Wheaton, 7 Paige, 368.)

The same principle is recognized by this Court in Ward v. Latimer, 2 Tex. R. 245. This decision also shows that the Clerk cannot decide this matter on which the issuance of process to another county depends, *ex officio* ; but it must legally appear in order to give him jurisdiction to issue the process.

The cases which have been referred to show that the facts which authorize the process to another county, must affirmatively appear. That fact, legally ascertained or developed in

the course of its proceedings, was necessary to give the Court jurisdiction; and the only officer whose legal and official duty and power it could be to ascertain the fact was the Sheriff, in endeavoring to make the execution.

The issuance of execution is not a judicial act. It is not the act of a Court, but of a ministerial officer, (Kyle v. Evans, 3 Ala. 481,) and must be based upon proper jurisdiction in the Court.

In this case the jurisdiction of the Court not having arisen or attached it was a mere act of assumption not warranted by law on the part of the Clerk.

On the fact of the judgment lien will be found to depend most of the cases and much of the reasoning in regard to the effect of irregularities in executions.

The case of Cox v. Nelson, 1 Monroe, Ky. R. 94, has been referred to as showing that an execution issued to another county, where the facts specified by the statute did not exist, was only voidable, not void.

The Kentucky statute was in these words: " That where " judgment shall be obtained in any County Court for any debt " or damages, and the person against whom such judgment " shall be obtained shall remove himself and his effects, or " shall reside out of the limits of the jurisdiction of such Court "it shall be lawful for the Clerk of the Court, where such "judgment was given, at the request of the party for whom " the same was rendered, to issue any writ of *fieri facias* or " *capias ad satisfaciendum*, and direct the same to the Sher- " iff of any county where the defendant or his goods shall be " found." (See Mason v. Rogers, 4 Litt. 376.)

Instead of the right to issue execution to another county, depending as at common law, on the defendant's not having sufficient property in the county, a fact to be officially known and returned by the Sheriff, it was made to depend on the defendant's having removed himself and his effects, or residing out of the county, and on the request of the party plaintiff to the Clerk. Evidently these are not matters the Sheriff could

officially ascertain. They are facts *in pais*, which the Clerk was required to decide, and his action was then based on the request of the plaintiff. The statute of Texas, however, is only declaratory of the Common Law. The fact on which it authorizes execution to issue is the same fact on which the English Courts sent execution to another county ; and, as well from the application of the Common Law therefore to the case, as from the nature of the fact to be ascertained, there must be a return of no sufficient property to satisfy the execution made by the Sheriff, to authorize execution to issue.

It is also to be observed that the Kentucky statute, in terms, confers the power upon the Clerk, and he therefore having the jurisdiction, must decide it. But the statute of Texas confers the jurisdiction on the Court in the ordinary manner in which powers are given to Courts. The Clerk therefore cannot undertake, under our statute, to decide the question, and issue execution. When execution issues, and is returned *nulla bona*, that return becomes a record of the Court, establishes the fact and gives the Court, or its proper officer, the authority to issue execution to another county.

Where the plaintiff in execution, or his partner, purchases under execution improperly sent to another county, the sale is void. In this case the attorney purchased. (Sanders' heirs v. Ruddle, 2 Monroe, 139 ; Scott v. Maupin, Hardin's R. 122 ; Mason v. Rogers, 4 Litt. 375 ; Cox. v. Nelson, 1 Monroe, 94 ; Brydie v. Langham, 2 Wash. Va. R. 72.)

2d. The executions were void for want of form.

Being executions issued to a different county than that in which the judgment was rendered, they should have been, what is known in the books of practice, as *testatum* executions. That is, they should have stated on their face the facts which justified their issuance, and rendered them lawful precepts to the Sheriff of another county, to wit: that execution had issued to Nacogdoches county, and been returned "no sufficient property found," and it being testified that the defendants had property in Galveston county, the Sheriff was there-

fore commanded to make the amount of the execution. That
the practice at Common Law controls on this subject, and that
there is greater necessity for keeping up, in substance the dif-
ferent kinds and grades of executions with us, than in Eng-
land, see Scott and Rose v. Allen, 1 Tex. R.

This is not a mere technical objection. It goes to the law
and to the justice of the case. It is a condition precedent to,
and is of the essence of, an execution issuing from one county
to another, that it should show, in the only manner in which
it can be ascertained, that the defendant has no property in the
county in which judgment was rendered. This is the fact up-
on which in the language of the law, it becomes "lawful" to
issue execution to another county. It is the fact, which con-
stitutes the authority to the Clerk to issue the process; and
by which a Sheriff can know that it is legal and imperative
upon him.

An execution is the means of carrying a judgment into ef-
fect. The mere *ipse dixit* of a Clerk is no legal execution.
It must embody and state such facts as in law authorize the
judgment to be executed. Suppose a Clerk should issue his
order to the Sheriff under the seal of his Court, commanding
him to collect $500 of A. B. and pay it over to C. D. This
would be no valid execution, and the Sheriff would not be
justified in enforcing it, although a judgment between the same
parties, for that amount, might actually be in existence. The
execution must show the judgment, because it is the judgment
out of which springs the legal command to the Sheriff.

And so, when the statute provides a fact, in addition to the
judgment, upon which only it becomes lawful to resort to exe-
cution to another county, the process must show that fact, in
order that there shall be a legal command upon the officer.
This was expressly decided in Simonds v. Catlin, 2 Caine's
Cases, 460; and see Allen v. Allen, Black. R. 694; Brand
v. Mears, 3 Term R. 388; Towers v. Newton, Ad. and El.
N. S. 319; 41 Eng. Com. Law Rep. 558; Sup. U. S. Digest
"Jurisdiction" 32, 33, 34. And see also Ward v. Latimer,

2 Tex. R. 245, as before quoted, which seems to me directly in point, in the principle involved.

II. Assuming that it has, at least, been shown that the executions to Galveston county were voidable, I maintain that the Sheriff's sale was void, because the attorney for the plaintiffs in execution became the purchaser, who stood affected by the irregularities in the executions, and could obtain no title under them.

The principle is well fixed, that although titles of third persons, innocent purchasers, under execution sales, may be protected against irregularities not rendering them absoultely void, yet if the plaintiff, or his attorney, who is presumed to cause the irregularities, becomes the purchaser, he stands in a different attitude ; he can get no benefit from his wrongful acts, and will not obtain title. (Simonds v. Catlin, 2 Caine's Cases, 62 ; Jackson v. Caldwell, Cowen, 621; Same v. Bowen, 7 Id. 13, 21 ; Hayden v. Dunlap, 3 Bibb, 216 ; Hoskins v. Helm, 4 Litt. 310 ; Sanders' heirs v. Ruddle, 2 Mon. 139 ; Harrison v Rapp, 2 Blackf. 1. The principle constantly held (Howard and wife v. North) is that in order that irregularities merely shall not vitiate the sale, the purchaser must be an innocent purchaser.

III. Gould, not having acquired title, by virtue of the Sheriff's sale, subsequent purchasers from him took only his title and stand in the same position.

1st. This is the case without reference to the question of whether the subsequent purchasers had or had not notice of the defects in Gould's title. The judgments, executions and Sheriff's sale are necessary muninents of the defendants' title. They are links in the chain of title, which it is as essential should be legal and perfect as the deeds by which they claim. (Williams v. Peyton, 4 Wheat. 79.)

A wide distinction exists between a title, a muniment or link in which is intrinsically imperfect or defective, and one in which the paper title is perfect, but the parties being competent, yet, from fraud or illegality in the consideration or design

of the contract—secret, and existing only in the minds of the parties, it may be avoided by some proceeding for that purpose. The want of a seal or other essential requisite of a deed, of authority in an agent who conveys, of a legal mode of conveyance whether by public or private proceedings, are instances of the first. A deed made for the purpose of defrauding creditors is of the second class. The first fails *ab initio* to give a title; the latter conveys the legal title; and, though it may be avoided between the parties, yet, if there be a subsequent conveyance to an innocent purchaser, is made perfect.

If the sale to Gould did not pass the title of Roberts and Phillips, as has been shown, their original legal title remained vested in them. And the rule is well settled, that no subsequent conveyance to an innocent purchaser can confer a good title, unless an equity merely, and not a legal title remained in the paramount or prior claimant. In other words, it is only against one having an equity, that want of notice in a subsequent purchaser can give title. (See Williams v. Lambe, 2 Brown's Ch'y R.; Howe v. Pierce, 2 Wash. Va. R.; Vattier v. Hinde, 7 Peters, 252 on page 271; Hughes v. Graves, Littell, 317.)

Bailments are an example. No sale of the property of the bailor, to any number of innocent purchasers can destroy his title. (Story on Bailments, Sec. 102.) So in case of sales by infants and of persons *non compos*. If the original deed failed to pass their legal title, no transfer of the property to subsequent innocent purchasers can affect their rights. Cases of agency are very analogous to the present. The Sheriff has been regarded as the agent of the defendant in execution, (3 Wash. C. C. 550,) the law regulating the powers of his agency.

2d. The subsequent purchasers were affected with notice of the defects in Gould's title. Purchasers of land must investigate the title, and must know the legal effect of all deeds or proceedings on which the title depends.

If an execution has issued on which a sale has taken place, they must know the legal effect of that execution. If void,

they were bound to know that no person whatever could obtain title by a sale under it. If voidable, they must look to the sale and the character of the purchaser—whether a third person, whose title would be protected, the defendant having failed to take steps to avoid the execution ; or the party or his attorney responsible for the irregularities and unable to obtain title by them.

The general rule on the subject of notice is laid down. (3 Sugden on Vendors, 474, paragraphs 57 and 59 ; Williams v. Peyton. 4 Wheat. 79 ; Grass v. Castleman, 5 Ran. 207–8 ; Golden v. Maupin, 2 J. J. M. 238–9 ; Stapp v. Toler, 3 Bibb, 450 ; Smith v. Pope, 5 B. Mon. Ky. R. 337,—a case directly in point in principle with this ; Graves v. Graves, 1 A. K. Marsh. 165 ; Thompson v. Blair, 3 Murph. 583 ; Johnson v. Gwathmey, 4 Litt. 318.)

IV. The Sheriff's levy and sale, under these executions, were void, because the property levied on was pointed out by the plaintiff's attorney, and sold at only two-thirds of its appraised value. Two positions may be assumed, one of which must be true, and either of which shows the sale to have been void.

We say, 1st, that the defendants in execution, Roberts and Phillips, had not had the right which the law gave them twice to point out property, and that consequently the levy by the Sheriff on property designated by the plaintiff's attorney was unlawful ; or,

2d. That if the levy on property pointed out by plaintiff's attorney was lawful, then it was bound to bring its appraised value or there was "no sale."

With respect to the first point, the effect of a levy on property designated by the plaintiff's attorney, before the plaintiff or his attorney has any right to designate the levy, the attention of the Court is particularly requested to the language of the statute. (See Sec. 19, Execution Law, 1842, Hart. Dig. 1342.) After providing for the right of the plaintiff to point out twice, in case there be no sale, (the law says) " it shall

" then be lawful, after the expiration of three months from the " last mentioned sale day, for the plaintiff in execution, his " agent or attorney, to designate such property of the defendant " as he may think proper to be levied on." This language certainly implies that unless the defendant has had the rights previously granted " it shall not be lawful."

This Court has expressly decided the question. (Scott and Rose v. Allen, 1 Tex. R. 518, 519; Bryan v. Bridge, 6 Tex. R. 137.)

2d. Admitting the levy not to have been void, the Sheriff's sale not being for the full appraised value of the property, was void.

Aside from the question as to the validity of the executions on account of their issuance to another county, which has been fully discussed, and looking alone to the levy, I believe that the time at which the right of the plaintiff or his attorney to designate the levy had arrived.

That the property so pointed out by plaintiff's attorney was bound to bring its full appraised value, or that it was " no sale," is to assert the very language of the law. (Hart. Dig. 1342.)   A precisely similar case has been decided by the Supreme Court of the United States.   (Collier v. Stanbrough, 6 How. 14, 21, 22; Phelps v. Rightor and others, 9 Rob. La. R. 541 ; Gantley v. Ewing, 3 How. S. C. U. S. R. 707.) And see Howard and wife v. North, (5 Tex. R. 290,) in which a sale at less than two-thirds appraised value, was held void for want of authority in the officer. (Nott v. McGavock, 1 Yerger, 469 ; Voorhies v. Bank U. S. 10 Peters, 471; Jones v. Planter's Bank, 3 Humph, 79.)

If it were not properly the time of the plaintiff in execution to designate the levy, yet, if he does so, if he exercises the right, and the levy is not held absolutely void, it must be followed by the same consequences certainly, so far as protection to the rights of the defendant extend, as if the levy had been properly made. The object of the law, was to require that such property as was selected by the defendant in execution,

or by the Sheriff, observing a certain order in making his levy, should be subject to sale at two-thirds of the appraised value. But where the plaintiff in execution selected the property, it should bring its full appraised value, or no sale. The reason upon which the full value was to be brought was, that the plaintiff designated the property to be levied on. Here the plaintiff in execution run his executions to a distant part of the State, seized property selected by himself, consisting of town lots purchased for an investment in a new and prosperous town, and in profound ignorance of the whole matter, this property was sold by the Sheriff. The letter and the policy of the law require that it should have brought its full appraised value.

Law and justice would both be absurdities, if they could hold that where the plaintiff in execution designates a levy on the defendant's property, lawfully and regularly, the property for the security of the defendant, must bring its full appraised value. If, however, the plaintiff designates his levy irregularly, at a time before he was entitled to do so, then the law will permit it to be sold for two-thirds of the appraised value. This would be permitting a party to profit by his wrongful act.

3d. In the next place, we assume that since the levy on this property was designated by plaintiff's attorney, who became the purchaser at the sale, that as to him, the sale was void and no title passed, and that his subsequent purchasers could acquire no better title. Reference is made to the same authorities which were quoted in the former part of this brief as to the effect of irregularities in the execution, and purchase by the party causing the irregularities. And also as to the title of the subsequent purchasers.

V. The Court will observe from the record that more than a year elapsed between the issuance of certain of the executions, without revival of the judgment. This Court has intimated, if not expressly decided, that where an execution plaintiff permitted more than a year and day to elapse without issu-

ance of execution a subsequent execution would be void unless the judgment was revived. Out of abundant caution it is deemed proper to ask any benefit which may arise from a consideration of the above point.

*W. Alexander*, also for appellees. It is respectfully submitted that as the judgment was obtained on May 11th, 1841; and as the first execution was issued on June 26th, 1841, and the second execution on July 17th, 1843, and the third execution was issued on December 19th, 1843, this case is already settled by the opinions of this Court delivered in Bennett v. Gamble, 1 Tex. R. 124, and Fessenden, adm'r, &c. v. Barrett, 9 Tex. R. 475.

WHEELER, J. The principal question in this case, and the only one which it is material to consider, as that will dispose of the case on the merits, is, whether the defendants have acquired a good title under the Sheriff's deed.

Several objections are urged to the validity of the title; and first, it is objected that the execution was issued illegally to the county of Galveston upon the judgments rendered in Nacogdoches county, because there had been no return of *nulla bona* upon the prior executions; by which alone it is insisted, it could have been legally ascertained that the defendant in execution had not property in the county where the judgment was rendered sufficient to satisfy the execution. It is true, there is no such return, but upon the first execution the return showed that the defendants refused to point out property; and upon the second, that the defendants' attorney pointed out, and a levy was made on "all the right, title and interest that John Durst has in and to his plantation and residence;" and that it was not sold for the want of bidders; no one, it is to be presumed, wishing to purchase John Durst's plantation and residence, under an execution upon a judgment against Roberts and Phillips. It would not seem an unreasonable conclusion from two such returns, thus showing that the defend-

ants had twice had the opportunity afforded them of pointing out property of their own to satisfy the execution, and had not only failed to do so, but had pointed out the property of another, that they had not property within the county subject to the execution.   It would seem to afford quite as strong *prima facie* evidence of the fact as a simple return of *nulla bona;* and, it is to be observed that the statute does not prescribe what evidence shall be received as sufficient.   (Hart. Dig. Art. 1336.)   Such a return doubtless would be so deemed : but it does not follow that nothing else would.   And it would certainly be going very far, and farther I apprehend than any Court has hitherto gone, to hold that no other evidence could be received, and that the absence of a formal return of *nulla bona* would invalidate and defeat the title of the purchaser under a subsequent execution, who had no concern with, and is not presumed to know the returns which may have been made or omitted to be made, upon the previous executions; but who is required to look alone to the authority conferred on the officer by the judgment and execution under which the sale is made.   Let it be admitted that it was not strictly regular to issue the execution to the county of Galveston, without first having a return of *nulla bona* in the county of Nacogdoches ; it surely cannot be intended seriously to insist that the execution so issued is a nullity, so that the officer cannot justify, or the purchaser acquire a title under it.   That would indeed be a doctrine fraught with serious consequences.   It would place the Sheriff in an extremely perilous situation. If he failed to execute the process he would be liable to the plaintiff in execution ; and if he proceeded to execute it, he and all concerned would be tresspassers.   A Sheriff could not safely execute or decline to execute process sent from another county ; nor could any one safely purchase property exposed to sale under execution, without first going to the county whence the execution issued and inspecting the records to see what returns had been made upon previous executions; and judgment debtors would be ruined by the sacrifice of their pro-

perty. It appeared upon the face of the execution in this case, that previous executions had been issued to the county of Nacogdoches. The process was regular upon its face. The Sheriff was bound to execute it; and he and all others concerned had the right to suppose that the proceedings upon the former executions were regular, and such as authorized the issuing of the execution to his county; nor had he any right to inquire into the regularity of the judgment and proceedings in the case antecedent to the execution to him directed. The very elaborate and ingenious argument of counsel for the appellee proceeds upon the assumption that it is the return of *nulla bona* which confers on the Clerk the authority to issue the execution; whereas it is from the judgment that he derives his power. It is that which confers on him the authority as the ministerial officer of the law, to issue execution. If he should issue execution without a subsisting judgment conferring on him the authority, the execution would be a nullity, and all acts done under it would be void. The Sheriff could not justify under it; but he and all others concerned in its execution would be trespassers. But there is a marked distinction between that which confers the power to do a certain act and the rules which direct and regulate the mode of its exercise. If the former be wanting, the act done is a nullity, and is to be taken as if nothing had been done; but if the latter be not strictly pursued, the acts done will not necessarily be void; or if void as to some persons and purposes, they will not necessarily be so as to all persons and for all purposes; but only as to the person who may have the right to avoid them, and will exercise that right in the proper manner, and in proper time. This distinction was recognized by this Court in the case of Howard v. North, (5 Tex. R. 306,) where it was said, "A clear distinction is recognized to exist between a sale " without authority, and one where there is an authority not " strictly pursued; in the former case the sale is void; in the " latter the title will pass, and the party injured by the irregu- " lar acts of the officer will be left to his remedy against him."

And again "The distinction between acts done by an officer "without authority, and those done or omitted, in its irregular "exercise, has been previously stated. The former are nulli- "ties, and confer no right; the latter do not affect titles ac- "quired under the acts of the officer, unless the purchaser be "implicated." (Id. 315.) The sending the execution out of the county in this case without there having been a return of *nulla bona* upon the executions issued to the county where the judgment was rendered, was, at most, an irregularity; and not of a character to invalidate the title of a *bona fide* purchaser; as will be apparent by a reference to authorities.

In Coleman v. Trabue, (2 Bibb, 518,) it was objected to the title of the plaintiff in an action of ejectment, that the execution, under which he derived his title through a purchaser at the Sheriff's sale, had been irregularly issued out of the county where the judgment was rendered. But the Court said, "Whether it was irregular or not we do not deem it important "in the present case. For even admitting the irregularity, "the *fieri facias* was a good authority to the Sheriff to sell, "until reversed or set aside. And when a Sheriff sells to a "stranger, under a *fieri facias* issued on a judgment, which is "afterwards reversed, the defendant shall not be restored to "the property sold, but to the money for which it sold (2 Bac. "Abr. 740, 8 Co. 96; Cro. J. 246.) And, so the writ be not "void, it is a good justification, however irregular, and the "purchaser will gain a title under the Sheriff. (2 Tidd. Prac. "936.) The *fieri facias* undoubtedly is not void; at most, "it is voidable." And the title of the purchaser was upheld. And in the case of Cox v. Nelson, (1 Mon. 94,) it was held that there being cases in which an execution may go out of the county where the judgment was rendered, when a Sheriff receives an execution from another county, it is not his duty to inquire whether the case existed, which autorized it to issue or not; but he is to presume it regular and proceed to execute it. Id. 96, 7 J. J. Marsh. 148.)

In the case of Jackson v. Rollins, (16 Johns. R. 537,) in

delivering the unanimous opinion of the Court of Errors of New York, affirming the judgment of the Supreme Court, and considering the question whether, where execution had issued after a year and a day without the judgment having been regularly revived by *scire facias*, the sale under it would be void, the Chancellor said, " The better opinion is, that if ex- " ecution had been issued without any *scire facias*, the sale " under it would not have been void. It might have been " voidable, and liable to have been set aside, by the Supreme " Court, upon motion as irregular, or by this Court upon error " as erroneous ; but until that was done the title would have "stood. This question of irregularity or error, never can be " discussed collaterally in another suit. It is not a point in " issue in this action of ejectment. We are only to look to " the judgment and cannot question its regularity. Thus, in " the case of Patrick v. Johnson, (3 Lev. 403, 2 Lutw. 925,) " an action was brought for false imprisonment, and the de- " fendant justified under a judgment of the 1st year of Wil- " liam and Mary, and *ca. sa.*, of the 4th of William and Mary. " To this plea, the plaintiff replied, that the execution had " issued after a year and a day from the judgment, without " being revived by *scire facias* ; and, on demurrer, the Court " resolved, that the execution sued after the year, was not " void, but only voidable by writ of error ; and until it be re- " versed, it is a good justification. This case was decided in " the C. B., as early as the 6th of William and Mary, and it " has since been quoted as good law. Now, if a *ca. sa.* issued " after a year and a day will justify the Sheriff in taking the " body of a defendant, it will equally justify the Sheriff in sell- "ing his land ; and the purchaser may justify under such a "title, at least until the judgment and execution be set aside " for irregularity, or reversed by writ of error. It appears to "me that the conclusion from this authority is irresistible. " The same doctrine is taught in many other cases. Thus, in " Burke's case, (Cro. Eliz. 188,) and Shurley v. Wright, (1 " Salk, 273,) and Martin v. Ridge, (Barnes, 206,) a Sheriff suf-

" fered a prisoner to escape on *ca. sa.* issued after a year and
" a day, without a *scire facias;* and it was held that he was
" liable, and could not take advantage of the want of *scire*
"*facias;* because the execution was good until set aside. The
" process was only erroneous and not void. The Supreme
" Court of this State have uniformly regarded this as a settled
" rule of law. In the case of Reynolds v. Corp and Douglass,
" (3 Caines, 269) decided in 1805, the Court all agreed in the
" validity of an execution issued after a year and a day, with-
" out revival, but they admitted it was liable to be reversed,
" as erroneous. So also, in Jackson v. Bartlett, decided in
" 1811, (8 Johns. R. 361,) there was an ejectment against a
" purchaser of land under a Sheriff's sale, and the regularity
" of the execution was questioned, because it issued after a
" year and a day, without a revival of the judgment by *scire*
"*facias.* The Court say the question on the regularity of the
"*fi. fia.* could not be raised in an action of ejectment, and that
" though it may have issued a year and a day after judgment,
" without revival, it was only voidable at the instance of the
" party against whom it issued. The purchaser's title could
" not be questioned in that collateral action under such an
" execution. It was a good authority for the sale." (Id.
575-6.)

I have selected this from the numerous cases illustrative of
the same doctrine, for the reason that it disposes of another
objection to the title of the defendant in this case, suggested,
though not much insisted on ; that is, that more than a year
elapsed between the first and second executions. The same
doctrine was affirmed by the Court of Errors in the case of
Woodcock v. Bennett, (1 Cowen, 711,) Wooderville, J., said,
" The intimation of the Chancellor (in the case just cited) that
" the title might be affected by setting aside the execution, is
" rather a suggestion in the course of argument, than the re-
" sult of any decided opinion formed on the subject. Indeed
" if we attend to the definition of voidable process, that it
" stands good until reversed, and can only be reversed on ap-

" plication of a party to the suit, we shall arrive at a contrary
" conclusion.   A stranger in such a case, who becomes a pur-
" chaser, will be protected."  (Id. 737.)   And in this case
also the distinction is taken between those irregularities which
render the process void, and those which render it voidable
only ; the latter being treated as erroneous process.  " The term
" voidable (it was said) implies that there is a party who may
" avoid.   When issued after a year and a day, and the parties
" not changed, the plaintiff may or may not, at his election, raise
" the question of regularity.   The law permits the plaintiff to
" issue it, and considers it regular at the time of issuing, sub-
" ject to be defeated, on the application of the defendant.  If he
" apply before the execution is executed, the sale will be arrest-
" ed, and all proceedings under it cease; if he lie by until after
" the sale, then, on the principle that the execution is erroneous
" process, and good until reversed, he cannot recover the goods
" sold ; he can only call on the plaintiff for the money recov-
" ered.   In the other case," (where the judgment debtor had
" died before execution) " the act of issuing the execution was
" not warranted by law.  This forms the substantial distinc-
" tion between void and voidable."   And the general rule is
recognized that where the officer could justify under the pro-
cess, the purchaser will be protected in his purchase.   The
reason why the sale shall not be avoided for errors in the judg-
ment or process is " that great inconvenience would follow a
" contrary doctrine, so that none would buy of the Sheriff in
" such cases, and executions of judgments would not be done."
(Id. 734, et seq.)

These references will suffice to illustrate the doctrine, which
is every where maintained, that the purchaser of land at a
Sheriff's sale is not bound to examine into the regularity of
the proceedings by which the execution was obtained ; (1
Bailey, 512 ; 1 N. and M. 408 ; 2 Pet. 157 ; 1 Hill, S. C.
482 ; 1 Blackf. 210 ;)   and that however irregular a proceed-
ing may be, the title of the purchaser cannot be affected by it
unless the proceeding was absolutely void.   (2 McLean, 59 ;
Sugden on Vendors, 68, 69.)

We think it cannot reasonably be maintained that the error relied on in this case, if it be such, of issuing execution out of the county without a return of *nulla bona*, is an irregularity of so grave a character as to render the process a nullity, and the Sheriff a trespasser in proceeding to execute it; and if it was sufficient to afford a protection to the officer, it must also protect the purchaser. This, as a general proposition, and in its application to this case, is unquestionable. It is not necessary here to consider the exceptions to which it may be subject.

It is suggested that it appears by the record that the defendants had property in the county of Nacogdoches sufficient to satisfy the execution. This, however, is a mistake. In so far as anything appears by the record upon that subject, it is strongly to be implied from it, that the defendants had not property in that county subject to the execution. But if it were proved that they had, such proof, I apprehend, would no more annul the title of the defendants in this case, than would proof that the defendants had personal property on which the Sheriff might have levied, annul the title of a purchaser of land sold under execution in any case. These are errors in the proceedings with which the purchaser is not chargeable, and which cannot be alleged to impeach his title.

It is further insisted that the execution was void for the want of form, in not reciting that the defendants had not property in Nacogdoches county whereon to levy. This, at most, was but mere matter of form, which might have been cured by amendment in a direct proceeding to set aside the execution, (Graves v. Hall, *supra* ——,) and can upon no principle be held to affect the title of a *bona fide* purchaser. All that concerned him was to know that there was a subsisting judgment in Nacogdoches county upon which the execution issued; and he had a right to suppose that the Court and its officers had not exceeded their power in sending the process out of the county.

But it is insisted that as the attorney of the plaintiff in execution bid off the property, he was affected with notice of the

alleged irregularity, in issuing the process, and the purchase by him was consequently fraudulent and void ; and that the defendants, though not affected with actual notice, could derive no title under the fraudulent vendee. If it be admitted that the purchase by the attorney was fraudulent, the consequence insisted on, as to subsequent purchasers from him, without notice, would not follow. This question was considered in the case of Fowler v. Stoneum, (11 Tex. R. 478,) in reference to the Statute of Frauds. It will be seen by reference to the authorities there cited, that it is the settled American doctrine, that a *bona fide* purchaser for a valuable consideration will be protected whether he purchased from a fraudulent grantor or a fraudulent grantee, though the statute declares the 'fraudulent conveyance utterly void. (Id. 501–2–3.) The sale may have been fraudulent and voidable as to the defendants in execution; but it was binding upon the purchaser, and therefore it was not a nullity. It vested the title, until avoided by those who had the right to avoid it, in the vendee. His conveyance passed the title ; and the *bona fide* purchasers without notice, cannot be affected by the alleged fraud in his purchase. (7 Mon. R. 612.) Being innocent purchasers for a valuable consideration, they can be in no worse condition than if they had purchased at the sale.

Finally, it is insisted that the sale was void, because the property levied on did not bring its full appraised value. This objection to the title of the defendants manifestly is not tenable. But one levy had been made, and that not of property of the defendants in execution. They had refused to point out property, and it became the duty of the Sheriff to make a levy in conformity to the directions of the law. Though not bound to receive the designation made by the plaintiff's attorney, his having done so, did not affect the validity of the levy. (Bryan v. Bridge, 6 Tex. R. 137.) The levy and sale appear to have been regular and in conformity to law ; the property having brought at least two-thirds of its appraised value. (Hart. Dig. Art. 1327, 1340.)

We are of opinion, therefore, that the title of the defendants is not invalid by reason of any of the alleged irregularities in the execution and sale ; and that the Court erred in refusing to permit it to be introduced as evidence of title in the defendants. The judgment is therefore reversed and the cause remanded.

Reversed and remanded.