## HOLMES VS. McINDOE and another.

20 657
75 396

20 657
61 LRA 360n

STAY OF PROCEEDINGS on execution—*What attorney entitled to notice*—Ex parte order for stay of over twenty days—*Sec.* 29, *ch.* 140. *R. S.*—EXECUTION *after assignment of judgment and death of judgment creditor*—*Judgment against firm and execution against individual property*—VENDITIONI EXPONAS *may be issued by clerk without order of court*—*What officer to sell upon it*—LIEN OF JUDGMENT *accruing under R. S.* 1849—*Effect of levy in continuing lien.*

1. Under the circumstances of this case (*vide infra*), the attorney of the assignee of a judgment the only one entitled to notice of an application for a stay of proceedings.

2. After a court commissioner or judge at chambers has made one *ex parte* order, staying proceedings upon an execution for twenty days, a second *ex parte* order for a further stay is a nullity (under sec. 29, ch. 140, R. S.).

3. Under ch. 62, Laws of 1858, after the death of a judgment creditor, though the judgment was previously assigned by him, execution must still issue in his name.

4. Where judgment has been taken against partners in their firm name, but the record shows clearly of whom the firm consisted, and that the judgment should have been against them in their individual names, the defect in the form of the judgment may be disregarded (under sec. 40, ch. 125, R. S.), and execution issued against them individually.

5. A *venditioni exponas* is not properly an execution, but rather a mandate or order requiring the officer to proceed to execute the *fi. fa.*; and it may be issued by the clerk without an order of court.

6. In case the *fi. fa.* has been levied on *land,* and the property returned unsold for want of bidders or other cause, the *venditioni* may go either to the officer who made the levy or to the sheriff in office. In case of a levy upon *chattels,* the sale must be by the officer who made the levy.

7. Under secs. 5 and 7, ch. 102, R. S. 1849, the lien of a judgment continued, as against the judgment debtor, during the life of the judgment; and where it accrued under that statute, it continued after the revision of 1858, by sec. 2, ch. 191 of that revision.

8. Where the lien of a judgment continues by statute only ten years after it is docketed, will such lien be continued by the mere force of a *levy* made within the ten years?

APPEAL from the Circuit Court for *Marathon* County.

This appeal was from an order setting aside a sheriff's sale. The papers used at the hearing of the motion show the following facts:

In 1854, *Robert Holmes* brought suit in said court against "McIndoe & Shuter, partners &c.," upon a note executed to him in the name of "McIndoe & Shuter," with a warrant of

attorney annexed, executed the same day by *Walter D. Mc-Indoe* and *Charles Shuter*, which recited that they were justly indebted to said *Holmes* upon a certain promissory note of even date therewith for the sum of $15,500, &c., &c. Judgment was entered upon confession, with release of errors in the usual form; and the court, in 1859, made an order entitled in the case of "*Robert Holmes v. Walter D. McIndoe & Charles Shuter,*" that plaintiff have execution against said defendants. In 1861, *Holmes* assigned the judgment to certain persons, who afterwards assigned it to one Hazelton as administrator of one Valentine. In 1862, *Holmes* died. In 1864, and less than five years after the making of said order, E. L. Browne, Esq., filed an affidavit in said court showing that Hazelton, as such administrator, was the legal owner and holder of said judgment; that the affiant was employed as his attorney to enforce the same; and that there was still due thereon $15,500, with interest, &c. ; and on this affidavit obtained an order of court substituting him as attorney of record, in place of the original attorneys of the plaintiff, which order was duly filed in said court, and an entry of such substitution made on the court calendar for that term. The affidavit of Mr. Browne filed in this case in March, 1866, as hereinafter mentioned, states that said order of substitution was obtained in the presence of Miner Strope, Esq., the attorney of the defendants, then and there appearing in open court as such. An execution was thereupon issued (countersigned and endorsed by said Browne as attorney for the plaintiff), which recited that judgment was rendered, on &c., in an action between *Robert Holmes*, plaintiff, and *Walter D. McIndoe* and *Charles Shuter*, defendants, and directed the judgment to be satisfied out of the property of said defendants. In October, 1864, the sheriff levied upon real estate of the defendants in said county, and advertised it for sale, the name of said Browne, as attorney for the plaintiff, being attached to the notice. Thereupon *McIndoe*, by Miner Strope, Esq., as his attorney, instituted a suit against Hazelton and the

sheriff to restrain the sale, the complaint therein alleging that Hazelton claimed to own and control the judgment, and that Browne was his attorney seeking to enforce the same, &c. An injunction was obtained in said suit; and the sheriff made a special return upon the execution, stating the facts. The supreme court reversed the judgment, and directed the suit to be dismissed. *McIndoe v. Hazelton et al.*, 19 Wis., 567. After the cause was remitted to the circuit court, said Browne, as plaintiff's attorney, caused another execution in the nature of a *venditioni exponas* to be issued, December 6th, 1865, which, after reciting the issue of the former execution, and the return of the sheriff thereon, proceeds as follows: " Now therefore, we, being desirous that the said plaintiff should be satisfied of his damages aforesaid, command you that you sell or cause to be sold, according to law, the lands, tenements and real estate of the said defendants by you in form aforesaid attached, levied upon and taken by virtue of the aforesaid execution, and every part thereof, for the best price that can be got for the same, and at least for the damages and costs aforesaid, and that you return this writ within sixty days after its receipt by you, to the clerk of the circuit court of the said county of Marathon, with your doings thereon." This writ was countersigned and indorsed in the usual form by said Browne as plaintiff's attorney, and there was also an endorsement signed by the clerk, February 5, 1866, declaring it to be renewed for sixty days from that date. The lands levied upon were again advertised to be sold on the 20th of January, 1866, and the name of said Browne as plaintiff's attorney was attached to the notice of sale. On the 19th of January, the defendants obtained an *ex parte* order from a court commissioner for said county, staying proceedings in the cause for twenty days; and said order having been served upon the sheriff, the sale was adjourned by him to February 10th. On the 9th of February, said court commissioner endorsed upon a certain affidavit and notice entitled in said cause, an order di-

recting the plaintiff's proceedings to be stayed until the next term of said court, to enable the defendants to make a motion to set aside the execution. Said term was to commence on the 12th of March. The notice was signed by Miner Strope, Esq. as defendants' attorney, was dated January 30th, and addressed to the plaintiff, and purported to notify him that an application would be made for said order February 9th. The affidadavit merely stated in substance that a further stay was necessary to enable the defendants to move to set aside the execution. Upon said notice and affidavit was an admission of service, 30th January, signed "HANCHETT & RAYMOND, Plaintiff's Attorneys, per Lamoreux." The order for a further stay was served upon the sheriff; but he proceeded and made the sale on said 10th of February. On the 14th of the same month, Mr. Browne received by mail from Mr. Strope, a notice addressed to him as "one of the plaintiff's attorneys," notifying him that at the March term of said court a motion would be made to set aside the execution and said sale, "for the illegality and irregularity of said execution and sale;" and that said motion would be "based upon the records in the case, the execution with the sheriff's return and indorsement, and the papers in said proceedings, and the orders of the court staying proceedings in the case." The notice was returned, with the reasons endorsed, viz.: 1. That said notice implied that there were other attorneys, besides said Browne, for the plaintiff or his assigns in said action—which was not the fact. 2. That said Strope was not the attorney of record for the defendants. 3. That he had not served upon said Browne a copy of the evidence on which the motion was based, nor pointed out the grounds of irregularity and illegality alleged, &c. At the March term of said court the defendants, in support of a motion to set aside the execution and sale, read and filed the above notices of motions to stay proceedings, with the affidavits attached and the orders of the court commissioner endorsed thereon, with proof of the service of such orders on the sher-

iff, &c., and also a copy of the above described notice of said motion; and read in evidence the judgment record up to the issue of the first execution, with the sheriff's special return thereon; and Mr. Browne, to resist said motion, read and filed an affidavit showing the subsequent proceedings in the action as above stated. His affidavit further states that he never had any notice of the applications for the orders staying proceedings; that he was the only person who had any authority as attorney to collect said judgment since the assignment thereof to Hazelton, and the only attorney who had acted as such since said assignment; that he had repeatedly talked with the defendants and Mr. Strope, and apprised them of his relation to said judgment as attorney for the holder and owner thereof, in enforcing the same; that they had repeatedly, in suits brought, and by receiving service of papers in suits involving the validty of said judgment, recognized him as attorney for the real plaintiff in interest in said judgment; and that *Mr. McIndoe* and Mr. Strope had each had interviews with Mr. Hazelton and the affiant, wherein they attempted to have said judgment compromised, &c., and wherein they had recognized said Hazelton as owner thereof, and the affiant as his attorney. The affidavit further stated that L. W. Thayer, Esq., was the attorney of record for the defendants, and that Mr. Strope's name had never been substituted. Attached to the affidavit was a certificate of the clerk of said court, dated February 10, 1866, stating that Mr. Browne was and had been since August 16, 1864, the attorney of record in this action for the plaintiff, and that Mr. Thayer was the only attorney of record therein for the defendants, according to the records in his office.

An affidavit of J. O. Raymond, Esq., was also read, stating that Hanchett & Raymond (of which firm affiant was a member) were never the attorneys of record of the plaintiff in this action, but were merely employed in 1859 to obtain an order for leave to issue execution; that since that time they had nev-

er had any connection with or control over the judgment, had never served any papers in the case, nor had papers therein served upon them; nor authorized any person to serve or accept service of any such papers to the knowledge of the affiant; that the firm was dissolved in 1862 by the death of Mr. Hanchett, and that the affiant was absent from the state from 12th April to 1st August, 1865.

The court set aside the sale, as being "not in accordance with law or the rules and practice of the court;" and the plaintiff appealed.

*E. L. Browne*, for appellant:

1. The order staying proceedings for more than twenty days was void for want of jurisdiction. Sec. 29, ch. 140, R. 'S.; *Sales v. Woodin*, 8 How. Pr. R., 349; *Bangs v. Selden*, 13 id., 374; *Wallace v. Wallace*, 13 Wis., 224, and authorities there cited; 2 Sandf., 703; 5 id., 656; 2 Code R., 76; Howard's Code, 660.   2. An order staying proceedings is inoperative until served on the opposite party or his attorney. *Campbell v. Smith*, 9 Wis., 305; *Spaulding v. Mil. & H. R. R. Co.*, 11 id., 158.   3. An attorney's authority ceases after final judgment. 1 Monell's Pr., 172; *Macbeath v. Ellis*, 4 Bing., 578; 1 Stevens' N. P., 411–12.   By statute, an attorney of record has no authority over the judgment after two years.   Sec. 43, ch. 132, R. S.   If the client takes out execution even within that time, by himself or another attorney, the attorney of record has no further authority over the matter.   *Parker v. Downing*, 13 Mass., 465.   After final judgment an attorney not of record may be employed to collect it, and for that purpose may issue execution, and sign it as attorney for the plaintiff, without an order of substitution.   1 Monell, 181; *Thorp v. Fowler*, 5 Cow., 446; Dunlap, 82; 1 Burrill's Pr., 355 and note; Archb. N. P., 140; 1 Stephens' N. P., 413; *Cook v. Dickerson*, 1 Duer, 679. R. S., ch. 134, sec. 8, directs that an execution be subscribed by the *party issuing it* or *his* attorney.   It does not require the party who obtained, or the attorney employed to obtain, the

judgment, to subscribe the execution. The object is that the opposite party may know on whom to serve all papers subsequent to the execution. If the judgment debtors have due notice of the assignment, they know that the assignee has the sole control over the judgment, and that the original plaintiff and his attorney have nothing more to do with it. 4. The death of the client terminates the authority of his attorney. 1 Am. L. C., 586–7; 1 Monell, 171; *Wood v. Hopkins*, 2 Penn. (N. J.), 689. 5. The death of Mr. Hanchett terminated the firm of Hanchett & Raymond, by operation of law. Story on Part., §§ 317–20. All persons dealing with the firm were bound to take notice of it. 15 Johns., 84. No further business could be done in the partnership name with third persons. *Murray v. Mumford*, 6 Cow., 442. 6. If the authority of the attorney of record does not terminate after final judgment, Mr. Thayer was the attorney of record of the defendants, and the plaintiff was not bound to take notice of any steps taken in the case by Mr. Strope. 13 Wis., 339. 7. The execution on which the sale was made was valid and regular. Sec. 8, ch. 134, R. S.; sec. 1, ch. 62, Laws of 1858. By the statute a judgment is a lien on real estate for only ten years from the time of docketing the same. The levy under the first execution was made and the sale would have taken place within the ten years, had it not been for the injunctional order served upon the sheriff. When the injunction was set aside and vacated by the judgment of this court, the ten years had elapsed. It was therefore necessary to sell under the second execution by virtue of the levy under the first, or the plaintiff's lien would have been lost by lapse of time, in consequence of the act of the respondents, and the order of the court, and without the fault of the plaintiff—there being subsequent judgment liens on the property of more than its value. In other language, it became necessary to sell by virtue of the levy made within the ten years, and for that purpose the second execution was made to perform the office of a writ of *venditioni exponas.*

1 Burr. Pr., 305; 5 Hill, 571; 3 Bouvier's Ins., 581–583; 2 Tidd's Pr., 1020. As to form of writ see 3 Burr. Pr., 123. Since the adoption of the code this practice still prevails. 2 Monell, 124. In *Marshall v. Moore*—Ill.,—,the court decided "that it is irregular to issue an *alias* execution and have it levied on other property, and have it sold, before a former levy is disposed of by sale or otherwise; that the proper remedy is to issue a *venditioni exponas*, to have the property already levied upon sold, before a new levy and sale are made." See *Cairns v. Smith*, 8 Johns., 336; *Dorland v. Dorland*, 5 Cow., 417. It is claimed that the execution in this case conforms to the statute in every particular. Were it otherwise, and the defect did not affect the substantial rights of the respondents, this court would not set it aside, but under sec. 40, ch. 125, R. S., would disregard it, or under sec. 37 would direct it to be amended. *Pierce v. Craine*, 4 How. Pr. R., 260; *Park v. Church*, 5 id., 383; 3 Code R., 21. Under the practice before the code, this was often done upon the motion and papers for setting aside the execution. *Inman v. Griswold*, 1 Cow., 202–203; *Chichester v. Cande*, 3 Cow., 39 to 57, and cases therein referred to. When an appeal is made to the equity side of the court, as in cases of motions to set aside sales or executions, the court is not limited by the statutes of amendment, but may amend whenever the ends of justice require it. It is done under the general authority of the court, indepen-dent of the statute. See *Hart v. Reynolds*, cited in *Chichester v. Cande*, 3 Cow., 44, where a judgment was permitted to be docketed "*nunc pro tunc*," to protect the rights of the parties, even as against judgment creditors whose judgments were first docketed. 8. The cognovit on which the judgment was entered releases all errors that may intervene in entering up judgment, *or in issuing execution thereon.* 9. The motion to set aside the sale does not specify the irregularity complained of. Rule 22, C. C. Rules; *Lane v. White*, 14 Wis., 585.

*Miner Strope*, for respondents:

1. Could an execution legally issue in favor of *R. Holmes* after his decease, and *after he had assigned the judgment?* Ch. 62, Laws of 1858 (R. S., ch. 134), was intended to facilitate the collection of judgments belonging to the estates of deceased persons. An assignee of a judgment creditor should resort to his common law remedy to enforce the collection. 2. In *McIndoe v. Hazelton,* this court suggest that the record in this action might be amended so as to make the judgment and the execution correspond as to the names of the defendants. But the right to amend did not confer a right to proceed without amendment. 3. The issuing of an execution, after the same had been enjoined, and before the order of this court directing the court below to dismiss the case of *McIndoe v. Hazelton* had been complied with, was irregular. 3. "An irregular or evasive order cannot be treated as a nullity; the remedy is by a direct application to the court, by appeal, or motion to supersede or revoke." *Gould v. Root,* 4 Hill, 554; *Spencer v. Barber,* 5 id., 568; *Hart v. Butterfield,* 3 id., 455. While an order remains unrevoked, it is binding upon the person to whom it has reference, and cannot be treated as a nullity. 1 Taunt., 47; 2 Cow., 463; 3 id., 73; Graham's Pr., 681; 22 Wend., 633; 10 How. Pr. R., 416; 15 id., 16. 4. The notice to Mr. Browne of 14th February, 1866, was sufficient; and he appeared and argued on the merits. 18 Wis., 209; 14 id., 224. The notice sufficiently referred to the papers on file in the case. Laws of 1862, p. 66. The objection that Mr. Strope was not attorney of record, would not apply where defendants sought to stay proceedings; nor is an attorney who is authorized to confess judgment under a warrant of attorney, an attorney for the defendants further than for that act. 5. The process on which the sale was made was not such an execution as is required by the statute, sec. 8, ch. 134, R. S. The statute makes no provision for a *venditioni exponas,* and in giving the form of an execution excludes proceedings by such a process. The levy of the execution of August 16, 1864, was not in the

sheriff's hands; he could not be ordered to sell without process; the *venditioni exponas* is *not* process, but is an order to expose property held by the sheriff *on process.* The levy of the old execution was on real estate, and it could and should have been sold on *alias* execution.—An order to sell should be signed by the court. This order expired on the 5th of Feb ruary, and the clerk pretended to renew it; but he has no authority to make or renew orders, or to renew executions.

*E. G. Ryan,* on the same side:

1. *Venditioni exponas* is not a form of execution now in force. R. S., ch. 134. Real estate is sold on the lien of the judgment, not of any levy. If personal property is levied on, the execution may be retained to sell after return day. If an order to sell is necessary, it must be the order of the court, not the ministerial act of the clerk or attorney. 2. The judgment is irregular, and must be amended before it can be executed. Ch. 100, R. S. 1849, was repealed before any of these proceedings, and was never applied to the judgment by the court. Ch. 125, R. S. 1858, may apply, but can only be applied by the court below. 3. The judgment is against the partnership. This is the voluntary act of the plaintiff, and is, if a mistake, a mistake of law and not of fact. Statutes of *jeofails* apply to mistakes of fact only. If good for anything, the judgment is good only against the partnership, and the sale of the real estate was unauthorized. The jurisdiction to interpret judgments, beyond the letter, is judicial, not ministerial, and could only be exercised by the court. The act of the clerk in making an execution beyond the judgment was not by authority. 4. Ch. 62, Laws of 1858 (R. S. 1858, p. 798), does not apply to judgments assigned by plaintiff before his death. The judgment must be revived; and the order for execution, pending the abatement, is void. 5. Proceedings were stayed by the order, whether providently made or not, and the sale was unauthorized when it took place. The order was made with jurisdiction, and service on the sheriff was enough to bind him.

Holmes vs. McIndoe et al.

He cannot be tolerated in adjudging that the order had not been properly served on others. 6. A release of errors does not go to any of these points. Such a release applies only to a judgment in conformity with it; and in no case waives any errors subsequent to judgment.

Dixon, C. J. The court commissioner had already made an *ex parte* order staying proceedings upon the execution for twenty days, when the second application was made to him, upon which he ordered a further stay until the next term of the court. No notice of the second application was given or attempted to be given to Mr. Browne, the attorney of Mr. Hazelton the assignee of the judgment, who, by the process of events, had become the only attorney upon whom such notice could properly be served. The statute is explicit that no order to stay proceedings for a longer time than twenty days shall be granted by a judge out of court, except upon previous notice to the adverse party. R. S., ch. 140, sec. 29. The period of time embraced in the second order, "until the next term of this court," considerably exceeded twenty days. The unreasonableness of a rule which would allow the force of the statute to be destroyed by a single or a series of *ex parte* orders staying proceedings exceeding the period of twenty days, is so apparent that further comment, or the citation of authorities, is deemed unnecessary. The second order was wholly unwarranted. It was a nullity, and as such was properly disregarded by the sheriff.

The act of April 28th, 1858, is general. It includes a case like this, where the judgment had been assigned in the lifetime of the judgment creditor, the name of such creditor still being requisite to the process of execution to be issued upon the judgment. If *Holmes*, the judgment creditor, were still alive, no doubt execution must issue in his name, as has been done here. The act expressly declares that, after the death of the person in whose favor a judgment has been rendered, execution

may issue thereon in the same manner and with like effect as though such person were still living. The provisions of the second section of the act as to payment of the moneys collected to the executors, administrators or heirs of the deceased judgment creditor, or the disposition of the same by the probate court, were not intended to limit the operation of the general language contained in the first section. They are special provisions for those cases, which the change in the law seems to have made necessary. In case of controversy between the assignee of a judgment and the executors, administrators, heirs or others, as to the existence or validity of the assignment, that would be a question to be settled by the court in which the judgment was rendered, upon proper application, or by any other tribunal having jurisdiction. It is objected that the judgment is irregular, and must be amended before it can be executed; that the proper names of the defendants must be inserted by order of the court before execution can issue. This same judgment was under consideration in *McIndoe v. Hazelton*, 19 Wis., 567, and we then said that we thought it valid without amendment, under section 40, chap. 125, R. S., which declares that the court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party. If the defect in the judgment does not affect the substantial rights of the defendants, then the execution ought not to be set aside, where it appears from the whole record to have been issued against the proper persons by name, even though the clerk or attorney who issued it possessed no power of amendment over the judgment. That power is conceded to be in the court. But the power to correct irregularities and the duty of disregarding them are very different things. The duty of disregarding errors and defects extends as well to those which intervene in the process of execution as in the judgment itself, provided no substantial right is effected.

It is also objected that the *venditioni exponas* is not a form

of execution now in force, and that executions can only be issued in the manner prescribed by chapter 134, R. S.    This objection fails for the reason that a *venditioni* is not an execution in the proper sense of that word.    It is more in the nature of a mandate or order requiring the sheriff to proceed to the execution of the former writ, which is still regarded as the foundation of his proceedings; and as such process was formerly issued by the clerk without an order of court, we think it correct practice that it should be so issued now.

But the question which has given us most trouble is that which was suggested at the argument, whether the *venditioni* ought not to have been addressed to the late sheriff by name, and delivered to him to execute, he being the officer who made the levy and return upon the former writ.  It is a general rule, that the officer who commences the execution of process must complete it, even though his term of office may have expired before such completion.    This rule, with certain modifications, is recognized by statute.    R. S., ch. 13, secs. 105, 106.    After the fullest investigation of authorities, we find no adjudged case in which it has been held that a *venditioni* to sell *lands* which have been levied upon by a sheriff whose term of office has expired, *must* be issued to the person or officer who made the levy.    There are many cases in which that practice has been recognized as proper, but not as the only proper practice. On the other hand, there are several well considered decisions to the effect that after levy and return of the *fi. fa.*, or execution proper, by a sheriff whose term of office has since expired, the *venditioni* may be directed to and executed by his successor, or the sheriff in office at the time it is issued.    In some of the cases this is considered to be the better practice, though the correctness of the other is not denied.    *Tarkinton v. Alexander*, 2 Dev. & Batt. (N. C.), 87, is such an one.    The opinion is valuable as a very full and able discussion of the whole question.    See also *Fowble v. Rayberg*, 4 Ohio, 56, and *Lessee of Sumner v. Moore*, 2 McLean, 59.    We think in case of a levy

on land and a return of property unsold for want of bidders or other cause, that the *venditioni* may go either to the officer who made the levy or to the sheriff in office at the time, and hence, that the *venditioni* in this case was properly directed and executed. This practice is of course confined to levies upon *land*. *Chattels* seized on execution are governed by a different rule. They pass to the possession of the officer making the seizure, and he acquires a property in them, and may sell without a *venditioni*, or, if one is issued, it must be to him, whether his term of office has expired or not.

A question is made as to whether the lien of a judgment can be perpetuated by a levy made before, and a sale after, the expiration of the ten years prescribed by statute. The present statute, R. S., ch. 132, sec. 36, seems to limit the lien of judgments in all cases to ten years from the time of docketing. It was not so under the statute of 1849, in force at the time this judgment was rendered, and the provisions of which are still applicable to it. By that statute the lien continued during the life of the judgment as against the judgment debtor, but in favor of purchasers in good faith and subsequent incumbrancers by mortgage, judgment, decree or otherwise, it ceased from and after ten years from the time of docketing. R. S. 1849, ch. 102, secs. 5 and 6. The lien of the judgment under that statute is saved by the second section of the repealing act. R. S. 1858, chap. 191. This controversy is between the assignee of the judgment and the judgment debtors, as to whom the judgment was a lien at the time of the sale, and consequently no question as to whether a lien may be continued by the mere force of a levy, is presented.

*By the Court.*—The order of the court below is reversed, and the cause remanded.