MARY C. DOBBINS *et al.*

*v.*

THE FIRST NATIONAL BANK OF PEORIA.

*Filed at Ottawa November 17, 1884—Rehearing denied March Term, 1885.*

1. JUDGMENT AND EXECUTION LIENS *upon real estate—how acquired— when they attach—their duration—under acts of 1845 and 1872.* Under the act of 1845, relating to judgments, a judgment did not become a lien on the real estate of the debtor unless an execution thereon was issued within a year from its rendition, but when execution was so issued, a lien was created which related back to the end of the term at which the judgment was rendered, and continued for seven years from that time, and no longer. A levy of an execution, in such case, within the seven years, did not extend the lien beyond that time, and a purchaser at a sale made under such levy, but after the seven years, took the property subject to the rights of intervening purchasers and incumbrancers.

2. But by the act of 1872, a judgment of a court of record becomes a lien on real estate from the day on which it is rendered, except as against other judgments rendered at the same term. If no execution is issued within one year from the entry of judgment, the same ceases to be a lien. But still an execution may be sued out within seven years, and that will become a lien upon land from the time it is delivered to the officer; and this execution lien will continue for one year after the expiration of the seven years, and a sale thereunder within the eight years will relate back to the levy, and confer upon the purchaser the same rights as if the sale had been made within the seven years.

3. A lien on the lands of a judgment debtor, obtained by the levy of an execution after the lien of the judgment is lost by not suing out an execution within one year, will, in determining priorities between creditors, be given the same effect that would be given to a judgment recovered on the same day, followed by an execution within the year, and no other or different effect.

4. Under the act of 1872, when the lien of a judgment is lost by not having an execution issued within a year, if a third party obtains a judgment against the same debtor before any execution is sued out on the former one, the lien of the junior judgment will take precedence over a lien subsequently created by suing out an execution on the prior judgment.

5. SAME—*in the particular case.* A judgment was recovered March 16, 1871, upon which an execution was issued within a year, which was returned "no property found." On April 10, 1872, an *alias* execution was issued, and levied on the 17th of the same month, on land of the defendant therein. On November 7, 1878, it was returned "no part satisfied," and on January 16,

1879, the land was sold on a *venditioni exponas,* sued out November 16, 1878, and after fifteen months a deed was made to the assignee of the purchaser. On March 2, 1878, a second judgment was recovered against the same defendant, by another party, upon which execution was issued April 29, 1878, and being returned unsatisfied, an *alias,* on December 31, 1880, was issued, which was levied on the same land, and the holder of the latter judgment filed a bill to set aside the sale and deed under the prior judgment: *Held,* that the lien of the first judgment expired in April, 1878, and before any sale under it, and left the lien of the second judgment in full force, and the only lien upon the land, and that the law of 1845, and not that of 1872, governed the case of the party claiming under the prior judgment.

6. Same—*extension of lien in favor of judgment creditors.* To extend the lien in favor of a judgment creditor beyond seven years, he must cause a levy to be made upon land of the debtor, and such levy must be made under and within the lifetime of the execution, when the lien on the land so levied upon will continue for one year after the expiration of the seven years' lien applicable in ordinary cases.

7. Same—*repealing clause in act of 1872—saving of preëxisting rights.* The act of 1872, relating to judgments and executions, and the liens thereof, after repealing the act of 1845 and other acts on the same subject, declares that "this (the repealing) section shall not be so construed as to affect any rights that may have accrued, or any suits or proceedings that may be pending, when this act shall take effect:" *Held,* that the effect of this provision was to continue the old law in operation as to all cases where suits had been actually commenced or were pending when the new law took effect.

8. The words, "suits or proceedings," in the saving clause of section 66 of the act of 1872, relating to judgments and executions, which repeals certain prior laws, embrace executions, a suit being an attempt to gain an end by legal process, and an execution of the judgment being the final step in a suit at law.

9. Retrospective legislation—*as affecting vested rights, remedies, and modes of procedure.* It is not competent for the legislature to pass an *ex post facto* law, or a law impairing the obligation of a contract; nor can it deprive a citizen of his property or other vested right by mere legislative act.

10. There is no such thing, however, as a vested right in a public law, which is not in the nature of a grant, and the legislature may repeal all laws which are not in the nature of contracts or private grants. But the repeal of a law will not be permitted in any case to affect or impair rights which have been acquired under it.

11. While a new statute adopted as a substitute for a prior one, can have no retrospective operation, so far as vested rights acquired under the former law are concerned, yet statutes which do not affect vested rights may be given a retrospective operation, and when such intent is clear, it is the duty of courts to give them effect accordingly.

12. SAVING CLAUSE *in repealing statute—construed.* 'Where a new statute adopted on the same subject as a prior one, repeals the former law, with a saving clause in the repealing section as to existing suits or litigation, the saving in such case is in legal effect a limitation on the repealing clause, and operates to continue in force the old law as to existing suits and proceedings.

13. PRACTICE—*time to object—that decree was not upon terms.* On bill to set aside a tax deed as a cloud on the title of complainant, he offered to pay the taxes and costs satisfied by the purchaser. The answer insisted upon the validity of the title, and no point was made on the trial as to the refunding of the sum paid at the tax sale, either before the master, or by exceptions to his report, so as to call for the judgment of the trial court on that question. The tax title was set aside without any conditions of paying the taxes, etc.: *Held,* that the objection to the decree on this ground came too late in this court, and was no ground for reversal.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. JOHN BURNS, Judge, presiding.

On the 16th of March, 1871, Thomas S. Dobbins recovered a judgment in the circuit court of Peoria county, against Henry T. Baldwin, and others. An execution was issued upon this judgment within the year, and returned no property found. On the 8th of April, 1872, an *alias* execution was issued on said judgment, and, on the 17th of the same month, levied by the sheriff on the premises in controversy, but remained in the hands of the sheriff, without any action being taken under it, until November 7, 1878, when it was returned with the indorsement, "no part satisfied." The sheriff, on the 16th of January, 1879, sold the premises in question, under a *venditioni exponas,* sued out November 16, 1878, to Gilbert G. Gibbons. The latter assigned the certificate of purchase to Mary C. Dobbins, who in due time, to-wit, on the 31st of May, 1880, received a sheriff's deed for the premises. Prior to this, however, to-wit, on the 2d of March, 1878, Richard A. Culter recovered a judgment in the Peoria circuit court, against said Baldwin and others, for $2709.97, and costs, which was assigned, for value, to the First National

Bank of Peoria, the defendant in error. An execution was issued on this judgment, April 29, 1878, which being returned unsatisfied, an *alias* execution was issued on the 31st of December, 1880, and placed in the hands of the sheriff for execution. On the 5th of January, 1881, this *alias* execution was levied by the sheriff on the premises in question. Thereupon the bank, together with others, filed the present bill, setting up, among others, the foregoing facts, and praying, among other things, that "said *venditio rei exponas*, said certificates of purchase, and said sheriff's deeds to Mary C. Dobbins, be each set aside as to complainant's said judgment," and that she be enjoined, etc. Other matters and interests are set up in the bill, but they are not material to a decision of the main question upon which the case turns, and need not, therefore, be noticed. On the hearing, the court sustained the title of the bank, and entered a decree accordingly, which was affirmed on appeal to the Appellate Court.

Messrs. Hopkins & Hammond, for the plaintiffs in error:

At the date of the sale upon the *venditioni exponas*, under the Dobbins judgment, lapse of time had not extinguished the right to make title under that judgment, which should be paramount to the lien of the junior judgment.

The act of 1872, where a levy has been made within seven years, authorizes a sale within one year after the seven years shall have expired. Its effect is to extend the lien, provided a levy has been made within the proper time. That act is new legislation, covering the entire subject of judgments, etc., embraced in the law of 1845. It is a repeal of the old and an enactment of new rules governing the entire subject.

The statute is one affecting the remedy, merely, and not the rights of the parties to the suit, and applies to judgments existing at the time of its adoption, as well as to subsequent judgments. It was in force when this levy was made, and therefore governs the rights and remedies acquired by the levy.

The act is not an *ex post facto* law, (*Wilson* v. *Railroad Co.* 64 Ill. 546,) and a retrospective law which does not impair the obligation of contracts, or partake of the nature of *ex post facto* laws, is not prohibited. *Satterlee* v. *Matthewson*, 2 Pet. 380.

The tax title is not invalid by reason of any insufficiency in the affidavit of notice, (Laws 1872, secs. 216-218, p. 51,) and the purchaser could not be affected by subsequent conditions imposed.

The court below erred in setting aside and cancelling said tax deed and tax title of Mary C. Dobbins, without requiring repayment of the taxes for which said lots were sold and deeded. *Phelps* v. *Harding*, 87 Ill. 442; *Durfee* v. *Murray*, 7 Bradw. 233.

Messrs. PUTERBAUGH & PUTERBAUGH, for the defendant in error:

A pending levy of an execution issued on the judgment made during the existence of the lien, will not operate to continue the lien of the judgment beyond the statutory period of seven years. *Tenney* v. *Hémenway*, 53 Ill. 97; *Conwell* v. *Watkins*, 71 id. 488; *Gridley* v. *Watson*, 53 id. 186; *James* v. *Wortham*, 88 id. 70.

The statute in force at the date of the judgment must govern as to the extent of the lien, and within what period it may be enforced. *Beasley* v. *Spencer*, 25 Ill. 217; *Dickson* v. *Railroad Co.* 77 id. 331; *Garrison* v. *People*, 87 id. 96; *Hyman* v. *Bayne*, 83 id. 256.

A statute is to operate in future only, unless it clearly appears that it was the intention of the legislature to make it retrospective; and this intention must be manifested by clear, unequivocal expressions. *Thompson* v. *Alexander*, 11 Ill. 54; *Betts* v. *Bond*, Breese, 223; *People* v. *Thatcher*, 95 Ill. 109; *People* v. *Peacock*, 98 id. 172; *Garrett* v. *Wiggins*, 1 Scam. 335; *Rhinehart* v. *Schuyler*, 2 Gilm. 473; *Bruce* v.

*Schuyler*, 4 id. 221; *Marsh* v. *Chesnut*, 14 Ill. 223; *Conway* v. *Cable*, 37 id. 82.

A party having a judgment or execution which is a lien on property, has no legal right to extend the time for its collection, to the injury of other creditors. A judgment creditor so situated has no right to place himself in a position that he can not proceed for its collection, and at the same time hold his . lien, so as to prevent others from proceeding to satisfaction. *Ross* v. *Weber*, 26 Ill. 223; *Davidson* v. *Waldron*, 31 id. 120.

A subsequent statute can not operate to change the rights of the parties under a decree rendered before the new act took effect. *Parmelee* v. *Lawrence*, 48 Ill. 331; 44 id. 405.

The repeal of a statute does not affect rights acquired under the repealed statute. *Naught* v. *O'Neal*, Breese, 29.

Independent of the saving clause in the act of 1872, we further claim that the statute of 1845, in force at the date of the judgment, issue of the execution, and levy, must govern as to the extent of the lien, and within what period it may be enforced. *Beasley* v. *Spencer*, 25 Ill. 217; *Dickson* v. *Railroad Co.* 77 id. 331; *Garrison* v. *People,* 87 id. 96; *Hyman* v. *Bayne*, 83 id. 256.

Where a notice of a tax sale is not given in the manner required by the constitution and by the statute, a court of chancery will interfere in behalf of a party interested as owner, or who is in possession, to remove a cloud occasioned by an invalid tax sale, under which title is claimed. *Barnard* v. *Hoyt*, 63 Ill. 341; *Gage* v. *Rohrbach*, 56 id. 262; *Gage* v. *Billings*, id. 268; *Reed* v. *Tyler*, id. 288.

Mr. Justice Mulkey delivered the opinion of the Court:

This cause was heard and determined at the September term, 1883, of this court, and an opinion filed therein May 19, 1884, reversing the judgment of the Appellate Court affirming the decree. A petition for a rehearing having been granted in the case, it is again before us for consideration.

With the construction given to the acts of 1845 and 1872, as expressed in the opinion heretofore filed in this case, we are entirely satisfied, and we therefore simply reproduce so much of the opinion as relates to that subject, which is as follows:

"The statute of 1845 provided that every judgment in any court of record 'shall be a lien' on the lands, tenements and real estate of every person against whom judgment has been or hereafter shall be obtained, 'from the last day of the term of the court in which the same may be rendered, for the period of seven years: *Provided*, that execution be issued at any time within one year on such judgment; and from and after the said seven years the same shall cease to be a lien on any real estate, as against *bona fide* purchasers or subsequent incumbrancers, by mortgage, judgment or otherwise.' Under this statute, it was held that a levy of an execution upon the lands of a defendant, made within seven years, did not extend the lien upon the land beyond the seven years, and that a purchaser at a sale made under such levy, but after the seven years, took the property subject to the rights of intervening purchasers and incumbrancers. In *Tenney* v. *Hemenway*, 53 Ill. 97, the court said: 'If the levy could create such results, (extension of the lien,) how long would it continue?' The same doctrine was recognized in *Conwell* v. *Watkins*, 71 Ill. 488, and *James* v. *Wortham*, 88 id. 69.

"In 1872 the statute of 1845 was repealed, and instead another was enacted, providing, in section 1, 'that a judgment of a court of record shall be a lien on the real estate of the person against whom it is obtained, situated within the county for which the court is held, from the time the same is rendered or revived, for the period of seven years, and no longer. * * * When execution is not issued on a judgment within one year from the time the same becomes a lien, it shall thereafter cease to be a lien; but execution may issue on such judgment at any time within seven years, and shall

become a lien on such real estate from the time it shall be delivered to the sheriff to be executed.' Section 6 provides that no execution shall issue upon any judgment after the expiration of seven years from the time the same becomes a lien, except upon revival of the same by *scire facias;* but real estate levied upon within said seven years, may be sold upon a *venditio rei·exponas,* at any time within one year after the expiration of said seven years.

"Section 1 of the act of 1872, and section 6 of that act, must be construed together. Considering these sections together, we think it was the intention of the legislature to so change the law, that where a levy is made within seven years from the date of the judgment, a sale of the land may be made within one year after the end of the seven years, upon a *venditio rei exponas,* with the same effect as if the sale had been made within the seven years. The new statute covers the whole subject, and was intended to take the place of the old. By the old statute, the judgment did not become a lien at all unless an execution was issued within one year; but when issued within a year, the lien was created, and related back to the end of the term at which the judgment was rendered. By the new statute, the judgment becomes a lien from the day on which it is rendered, except as against other judgments rendered at the same term. Before the passage of the new statute, an execution was not a lien upon land at all, and after a year and a day, if no execution had been issued, none could lawfully issue; but by the new statute, where no execution is issued within one year from the entry of judgment, the same ceases to be a lien. Still an execution may be sued out at any time within seven years, and in such case the execution becomes a lien upon land from the time it is delivered to the officer to be executed. How long does this lien last? The statute does not expressly say, but when it is in that connection said that real estate levied upon within the seven years after judgment becomes a lien may be sold at

any time within one year after the expiration of said seven years, it is plain this lien of an execution was intended in such case to be kept alive for that time, to make such lien effective.

"By the act of 1872, it seems that a mere judgment, by its own force, becomes a lien at once, and from its date. If no execution be issued within a year, the judgment lien ends; but if execution be sued out after the expiration of the first year, and within seven years from the date of the judgment, such execution becomes a lien from the time it comes to the hands of the sheriff to be executed, and if not levied within the seven years, that execution ceases to be a lien; but if levied within the seven, it may be sold within one year after the end of the seven years, and such sale will relate back to the levy, and confer upon the purchaser the same rights as if the sale had been made within the seven years. It seems to follow, that if execution be issued within a year from the entry of judgment, the judgment becomes a lien for seven years, and if land be levied upon by a valid execution within the seven years, it may be sold upon a *venditio rei exponas,* with like effect, either before the end of the seven years, or at any time within one year after the end of the seven years."

The opinion then proceeded to dispose of the case upon the hypothesis it was to be governed by the provisions of the act of 1872, and not of 1845, which necessarily led to a reversal of the judgment of the Appellate Court. Had the provisions of the act of 1845, and not of 1872, been applied to the case by this court, it would of course have led to an affirmance instead of a reversal of the judgment. It follows, therefore, the only question now to be considered is, whether the trial court, in applying the act of 1845, as it must have done, committed an error for which the decree should have been reversed by the Appellate Court.

It is a part of the organic law of this country, well understood and recognized, that it is not competent for the legis-

lature of any State to pass an *ex post facto* law, or a law impairing the obligation of a contract; nor can the legislature deprive a citizen of his property, or other vested right, by mere legislative act. These limitations upon State legislation are engrafted in the national constitution, which is the paramount law of the land. While the above general propositions are readily conceded and recognized by all, yet doubts and difficulties frequently arise in applying the principles which they announce. It is generally agreed, however, there can be no such a thing as a vested right in a public law, which is not in the nature of a grant,—hence, however beneficial an act of the legislature may happen to be to a particular person, or however injuriously its repeal may affect him, the legislature would clearly have the right to abrogate it. Indeed, the legislature has the undoubted right to repeal all legislative acts which are not in the nature of contracts or private grants. But the repeal of a law is not permitted, in any case, to affect or impair rights which have been acquired under it. So of the adoption of a new law,—it can have no retrospective operation so far as vested rights are concerned. Yet statutes which do not affect vested rights may be given a retrospective operation, and where such intent is clear, it is the duty of courts to give it effect. Thus the legislature has the unquestioned right to change the limitation laws of the State with respect to existing or antecedent causes of action, subject to the qualification the new or amended law must afford ample opportunity to enforce them, by suit, within the new limitation, for if it should not, it would in effect be to deprive those having such existing or antecedent causes of action, of vested rights, under the pretence of a change of the limitation laws, which of course could not be done. So, also, it is a matter of every day's experience for legislatures to change the law of procedure, and when so changed, where there is no saving as to existing litigation, all rights of action will be enforcible under the new procedure,

without regard to whether they accrued before or after such change in the law. It is frequently the case, however, that when an old law is repealed, and a new one on the same subject is adopted, there is an express saving in the repealing clause as to existing suits or litigation. A saving of this character is, in legal effect, a limitation on the repealing clause, and continues in force the old law as to existing suits and proceedings. Such was the case in the present instance. The change in the law of 1845, relating to judgment liens, etc., by the act of 1872 was marked and radical in several respects, as we have already seen; but the 66th section of the latter act, after repealing the act of 1845, together with other acts, declares expressly, "but this section shall not be so construed as to affect any rights that may have accrued, or any suits or proceedings that may be pending, when this act shall take effect." We think the manifest object and effect of this provision was to continue the old law in operation as to all existing rights, and to all cases where suits had been actually commenced. If this was not the intention of the legislature, we are at a loss to determine what its intention was, and nothing has been suggested by counsel for plaintiffs in error that warrants the conclusion that anything else could have been meant.

When the case was first before us for consideration, our attention was not called to the 66th section, and the decision then announced was made without any reference to it,—hence the conclusion reached. In the present presentation of the case that section is called to our attention, and, as already shown, it becomes an important factor in arriving at a proper conclusion in it. Giving it the effect already indicated, it follows, notwithstanding the act of 1872, the act of 1845 was continued in force as to the Dobbins judgment. Under that act the judgment became a lien on the premises some time in April, 1871, and continued until in April, 1878,—a period of seven years. Just before the expiration of this lien the Culter judgment was recovered, and also became a lien upon

the premises, subject to the superior lien of the Dobbins judgment.    No steps, however, were taken to make the lien of the latter judgment available, by sale of the premises or otherwise, until it expired, leaving the lien of the Culter judgment in full force.    Such being the case, it is clear the Culter judgment thereby obtained precedence over the Dobbins judgment.

By the construction heretofore given to the act of 1872, and which both parties to this controversy concede is correct, an execution issued under that act, within the seven years, is also made a lien upon the land of the execution debtor, which will continue, if not sooner extinguished by satisfaction of the judgment, for one year beyond the seven years from the date of the judgment, so as to cover the time allowed for selling under a *venditioni exponas.*    To preserve and extend this lien in the manner stated, the execution must, of course, be levied within the time fixed by law for its return.    By the act of 1872 it was the intention of the legislature to create and preserve a lien upon the real estate of the execution debtor during the entire time in which the judgment creditor would have the right to apply the land, by judicial process, to the payment of the judgment, so that in all cases of contests between judgment creditors about the priority of their claims, such contests could be readily determined by reference to the dates of their respective liens.    The law in this respect has not been changed.    As under the old law, the creditor having the oldest lien is still preferred.    The only change made by the new law in this respect is the manner in which these liens may be created.    Where, under the present law, the lien of the judgment is lost by not suing out an execution within the year, instead of being driven to his *scire facias,* as he was before, in order to obtain a new lien, he may now, at any time before the expiration of the seven years, sue out his execution, which will become a lien as soon as placed in the hands of the officer, and if levied within the lifetime of the execution will continue the lien, as before stated, for one

year after the expiration of the seven years, if the judgment is not in the meantime by some means satisfied. A lien thus obtained will, in determining priorities between creditors, be given the same effect which would be given to a judgment recovered on the same day, followed by an execution sued out within the year, but no other or different effect.

It follows, from what we have said, that where, under the present law, a judgment is obtained, but no execution sued out within the year, so that the lien of the judgment is lost, and before any execution is sued out on such judgment a third party obtains a judgment, which becomes a lien upon the real estate of the judgment debtor, the lien of the latter judgment will have precedence over a lien created by subsequently suing out an execution on the first judgment. Now it is clear, at the time of suing out the *venditioni exponas* in this case, the Dobbins judgment had long since ceased to be a lien on the land in question; and it is also equally clear the execution issued on that judgment, and levied upon the land on the 17th day of April, 1872, created no lien upon the land, for the act of 1872 did not go into effect until the first day of July of that year. Such being the case, it follows, that in order to sustain the title of plaintiffs in error, we must hold, that notwithstanding at the time of suing out the *venditioni exponas* they had neither a judgment nor execution lien, nevertheless their title is superior to that of defendant in error, who, it is conceded, then had a valid and subsisting lien upon the land, or we must hold that the act of 1872 was intended to operate retrospectively upon all existing judgments and executions, so as to create liens where none existed before. This we can not do. To so hold would be inconsistent with well established principles. Had the Dobbins execution been issued after the act of 1872 went into effect, there would be some, at least, apparent force in the position of plaintiffs in error; but as it was not, we think their position is clearly untenable. It is well settled by authority that statutes are

not to be given a retrospective operation except where it is manifest the legislature intended they should have such operation; and, as already shown, it is not competent even for the legislature to give such operation to an act where it will affect existing or vested rights. *Thompson* v. *Alexander*, 11 Ill. 54; *Betts* v. *Bond*, Breese, 223; *People* v. *Thatcher*, 95 Ill. 109; *People* v. *Peacock*, 98 id. 172; *Garrett* v. *Wiggins*, 1 Scam. 335; *Rhinehart* v. *Schuyler*, 2 Gilm. 473; *Bruce* v. *Schuyler*, 4 id. 221; *Marsh* v. *Chesnut*, 14 Ill. 223; *Conway* v. *Cable*, 37 id. 82.

But outside of this well established rule of construction, we have already seen the repealing clause of the act of 1872 expressly provided the repeal of the act of 1845 was not to affect any suits or proceedings that might be pending when that act went into effect. Learned counsel, however, suggest that the unsatisfied Dobbins judgment was neither a suit nor a proceeding. What was it, then? The meaning of the word "suit," in a legal sense, as given by Webster, is: "An attempt to gain an end by legal process." What was the end to be attained in this case? Confessedly the debt for which the judgment was obtained. This end not having been attained, it was still a suit, though by reason of the delay it subsequently became defective, so that the plaintiffs therein could not proceed further in it without reviving the judgment by *scire facias*. Blackstone's definition of the word "suit" is, in substance, the same as Webster's. Execution of the judgment we have always understood to be the final step in a suit at law. Such, at any rate, are the teachings of the horn-books on the subject.

It follows from what we have said, the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT: I dissent *in toto* from this opinion.

Mr. JUSTICE WALKER:  I dissent both from the reasoning and conclusion in this case.

Mr. JUSTICE DICKEY:   I can not concur in this decision.

Subsequently, upon a second application for a rehearing, the following additional opinion was filed:

Per CURIAM:   It is well settled that upon a bill filed by the owner of land against a purchaser at a tax sale, to set aside a tax deed as a cloud upon the title of the former, the latter will, as a condition of equitable relief, be required to refund to the purchaser all taxes, interest, costs, etc., for which the owner was liable, and which were discharged by the tax purchase.   Whether the same conditions will be imposed upon a judgment creditor of the owner of the land, upon a bill filed for a like purpose by such judgment creditor against a remote assignee of the tax purchaser, as is the case here, we do not, in the view we take of the case, deem it necessary to determine.   While the complainant in this case offers to refund the taxes, etc., if legally bound to do so, yet it does not appear that Mrs. Dobbins interposed any claim to such taxes, etc., but in her pleadings insisted upon the sufficiency of the tax title, which is clearly defective.   The cause was referred to the master to report upon the rights of the parties generally. The master prepared and filed an elaborate report, passing upon the rights of the several parties, and among other things found the tax title invalid, but as to the taxes themselves the report was silent.   Numerous exceptions were filed to the report by Mrs. Dobbins, but none of them assail it on the ground now urged.   We think, in any view, she should have interposed her claim before the master, or at any rate should have excepted to the master's report on that ground, which would have necessitated a ruling of the trial court on that question.   She ought not, under the circumstances, to be permitted to raise this question for the first time in a court

of review, as is sought to be done. Had she insisted on this right in the court below, it would have afforded the complainant an opportunity to have paid the small amount of taxes, rather than incur the vexation and expense of protracted litigation.

The petition is overruled. *Rehearing denied.*

Mr. JUSTICE SCOTT: I do not concur in this opinion.