CHARLES L. HASTINGS

v.

GABRIEL BRYANT et al.

*Filed at Springfield November 14, 1885.*

1. JUDGMENT LIEN—*under Revised Statutes of 1845 not continued by levy.* Under the Revised Statutes of 1845, relating to judgments, the levy of an execution, whether in a foreign county or in the county of the judgment, did not extend the judgment lien beyond the seven years; and on the expiration of the seven years' lien any execution and levy fell with it, and any subsequent proceeding thereunder as to *bona fide* purchasers or incumbrancers was void.

2. SAME—*sale after the expiration of lien—validity as against debtor.* Under that statute, if an execution issued within a year, the judgment became a lien for seven years from the last day of the term at which it was rendered; and although this lien was lost after the expiration of such time, yet an *alias* execution could be issued thereon after that time and within twenty years, and levied upon the real estate of the debtor, and a sale thereunder was valid to pass his title, though not as to *bona fide* incumbrancers and purchasers from him before levy and sale.

3. SAME—*extended, by act of 1872, one more year in case of a levy within seven years.* By section 6 of the act of 1872, relating to judgments, if a levy upon land is made within seven years after the rendition of the judgment, the lien of the judgment upon the land levied on, even as against *bona fide* purchasers and incumbrancers of the debtor, is extended for one year longer; and if a sale is made of the same within such additional year, it will pass the title, even as against *bona fide* purchasers and incumbrancers.

4. SAME—*under what process the sale may be made—the statute construed.* It is provided in section 6 of the act of 1872, that real estate levied upon within seven years after a judgment has been rendered, "may be sold upon a *venditio rei exponas,* at any time within one year after the expiration of said seven years." It is not essential, however, to the validity of the sale made after the expiration of the seven years, that such writ should be issued, as the office of a *venditioni exponas* is merely to direct that to be done which the officer already has the authority to do.

APPEAL from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. Brown & Kirby for the appellant:

Section 6 of the act of 1872, relating to judgments, provides that "real estate levied upon within said seven years may be sold upon a *venditioni exponas* at any time within one year after the expiration of said seven years." Under this the lien of the judgment is continued one year after the expiration of the seven year lien, if levied upon within the seven years, and the land so levied upon may be sold within one year after the seven years have elapsed, under a writ of *venditioni exponas*. *Dobbins* v. *First National Bank of Peoria*, 112 Ill. 553.

The question presented is, whether under this law the sale, when made after the seven years, must be under a *venditioni exponas.* That writ is one issued to compel the sheriff to sell property previously levied upon. 2 Bouvier's Dic. 621; Freeman on Executions, secs. 57, 59, *et seq.; Holmes* v. *McIndoe*, 20 Wis. 657; *Bellingall* v. *Duncan*, 3 Gilm. 477; *Phillips* v. *Dana*, 3 Scam. 551.

The writ of *venditioni exponas* confers no new authority upon the officer. *Irvin* v. *Pickett*, 3 Bibb, 343; *Cox* v. *Joiner*, 4 id. 94.

The effect of a sale under a writ of *venditioni exponas* is the same as though made under the original writ before the return day, and the purchaser acquires the same title which would have passed under the original writ. *Badham* v. *Cox*, 11 Ind. 456; *Zug* v. *Laughlin*, 23 id. 170; *Dor* v. *Hayes*, 4 id. 117.

A sale made under this writ relates back to the delivery of the original execution. *Taylor* v. *Mumford*, 3 Humph. 66.

If the levy of the original writ be upon real estate, the writ of *venditioni exponas* may be directed to, and executed by, either the sheriff who made the levy, or his successor in office. *Bellingall* v. *Duncan*, 3 Gilm. 477; *Holmes* v. *McIndoe*, 20 Wis. 657; *Sumner* v. *Moore*, 2 McLean, 59.

Messrs. MORRISON & WHITLOCK, Mr. OSCAR A. DE LEUW, and Mr. JULIAN P. LIPPINCOTT, for the appellees:

The cases cited by appellant do not overrule the cases of *Tenney* v. *Hemenway*, 53 Ill. 97, and *Scammon* v. *Swartwout*, 35 Ill. 342, which hold that the lien of judgments on real estate is the creation of the statute alone, and receives no aid from the common law.

The statute of 1872 has not provided for a sale of real estate after the expiration of the seven years, as against *bona fide* purchasers, except under the writ of *venditioni exponas*. The decision of this court, that the sale can take place only in the mode, at the time and upon the conditions and limitations imposed by the statute, is still the law. The case of *Dobbins* v. *First National Bank*, cited, does not decide that there is "time allowed for selling" without a writ of *venditioni exponas*.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was an action of ejectment, by appellant, against appellees, in the Morgan circuit court, to recover certain lots in the city of Jacksonville. Both parties claimed title through Alexander Edgmon, as common source. The title of appellant was based upon the following facts: On the 1st day of December, 1875, one Ann Becraft recovered a judgment in the circuit court of Morgan county, against Alexander Edgmon, on which execution issued within one year, and was returned by the sheriff unsatisfied. On the 13th day of November, 1882, *alias* execution issued thereon, and on the same day was levied on the property in controversy. The sheriff advertised the lots for sale on the 13th day of January, 1883, and on that day, under said execution, without the issuance of a *venditioni exponas*, sold the same to one Weathers, to whom a certificate of purchase was issued. Weathers afterwards assigned said certificate to appellant, and no redemption hav-

ing been made from said sale, the sheriff, on the 15th day of April, 1884, executed and delivered to appellant a deed for said lots.   On the trial below, the court excluded said sheriff's deed, which resulted in a finding for defendant.   A motion for a new trial was overruled, and judgment rendered against appellant for costs.   The appellant brings the case to this court by appeal.

The title of appellees is not disclosed, further than that they claim through the common source, therefore the only question presented is, whether said deed was sufficient to convey the title of Edgmon, defendant in execution, to appellant.   No objection is urged, nor is any apparent, to the validity of the judgment, or any of the proceedings under said execution, prior to the sale; but it is insisted that the sale is invalid because the *alias* execution having been issued and levied within seven years from the rendition of the judgment, did not authorize a sale of the property after said seven years had elapsed, but should have been returned and a writ *venditioni exponas* issued, under which it is conceded a valid sale could have been made.   The proper solution of this question will involve a construction of section 6, of chapter 77, of the Revised Statutes of 1874.   It will aid in this to look at the prior statute, and ascertain the supposed defects therein attempted to be corrected by this section of the act of 1872, and what alteration in fact was made by the latter act.

The statute of 1845 provided that the judgment shall be a lien, etc., "from the last day of the term of the court at which it was rendered, for the period of seven years, provided that execution be issued at any time within one year on such judgment; and after said seven years, the same shall cease to be a lien on any real estate, as against *bona fide* purchasers or subsequent incumbrancers, by mortgage, judgment or otherwise."   Under this statute it had been repeatedly held that a levy of an execution, whether in a foreign county or in the county where the judgment was rendered, would not extend

the judgment lien beyond the seven years, and that with the expiration of the lien of the judgment the execution and levy fell with it, and all subsequent proceeding thereunder, as to *bona fide* purchasers or incumbrancers, was void. (*Tenney* v. *Hemenway,* 53 Ill. 97.; *Gridley* v. *Watson,* id. 186 ; *Ewing* v. *Ainsworth,* id. 464 ; *James* v. *Wortham,* 88 id. 69 ; *Scammon* v. *Swartwout,* 35 id. 343 ; *Conwell* v. *Watkins,* 71 id. 492.) It was also held, under that statute, that when the execution issued on the judgment within one year after its rendition, although the lien of the judgment was lost at the end of seven years from its rendition, yet an *alias* execution could be issued thereon, after the seven years had expired, at any time within twenty years, and levied upon any property the debtor might own, and a sale thereunder would be valid. *Stribling* v. *Prettyman,* 57 Ill. 371 ; *Priest* v. *Wheelock,* 58 id. 114.

Section 1 of the act of 1872 provides that a judgment of a court of record shall be a lien, etc., "from the time the same is rendered or revived, for a period of seven years, and no longer." The section then provides that if execution be not issued within a year, it shall cease to be a lien, etc. ; but that portion of it is not material to be considered here. Section 6 of the act provides that no execution shall issue upon any judgment after the expiration of seven years from the time the same becomes a lien, except upon revival of the same by *scire facias,* "but real estate levied upon within said seven years may be sold, upon a *venditio rei exponas,* at any time within one year after the expiration of said seven years." By this section, if a levy was made within the seven years, the levy and execution no longer, as under the former law, cease to have vitality, as against subsequent incumbrancers or purchasers, when the seven years expire, but one year is given in which to sell the property to satisfy the execution ; and the time within which the sale may be made, as against the judgment debtor, is limited to one year after the expiration of the seven years.

It will be seen, then, that the substantive thing sought to be attained by the latter clause of that section was the extension of the right, in all cases, to satisfy the judgment by sale of the property levied upon during the seven years, but remains unsold at its expiration, after the seven years had expired, and to limit the right to make such sale, in all cases, to one year after the expiration of said seven years. The real object to be attained was to so change the law that a limited time should be given after the period fixed by the statute for the lien of the judgment had elapsed, in which to dispose of the levy and satisfy the judgment by sale of the property levied upon, and thereby give a more just rule, and relieve from the supposed defects already pointed out in the prior law. To accomplish this purpose the legislature employed the language of the latter clause of section 6,—"but real estate levied upon within said seven years may be sold, upon a *venditio rei exponas*, at any time within one year," etc. The difficulty here arises solely from the words, "under a *venditio rei exponas*," employed by the legislature, and it is contended that as it is by force of the statute alone that a judgment can be a lien upon lands, or that a sale of land on execution can be made, and that neither can receive any aid from the common law, to which they were unknown, the statute must be literally followed. It is true that the legislative will, as expressed in the act, must control, when it is ascertained according to the rules of construction. It is already seen that the object sought by this portion of the act was to give the right, in all cases where a levy had been made within the seven years, to sell the property levied upon to satisfy the debt for one year thereafter; but did the legislature intend, by the language employed, also to prescribe the particular mode in which it was to be made,—that is, to require that in all cases the sale should be made under a *venditioni exponas*, and not otherwise?

It is said by counsel, in argument, that this section of the statute is the first legislative recognition of the writ *venditioni exponas* in this State. However that may be, it had long been in use in this State as a common law writ, and this court, as early as the case of *Phillips* v. *Dana*, 3 Scam. 551, and again in *Bellingall* v. *Duncan*, 3 Gilm. 477, defined the office of this writ, and held it to be the proper writ to be issued to compel a sheriff to sell property previously levied upon under an execution, and which he failed for any reason to sell. A writ *venditioni exponas* is said to be properly defined as the writ which compels an officer to proceed with the sale of property levied upon under a *fieri facias*. *Phillips* v. *Dana, supra;* Bouvier's Law Dic. 621 ; Herman on Law of Executions, sec. 35 ; *Bellingall* v. *Duncan*, 3 Gilm. 477 ; Freeman on Executions, secs. 57-59.

It is said by Freeman in his work : "The *venditioni exponas* was so frequently used as to create the impression that it was a writ of *authorization* as well as of compulsion, and was necessary to enable the officer to proceed with the sale. Such is not the fact. It gave the officer no authority not previously possessed by him. If he was willing to proceed, the issue of this writ was a clear superfluity." Herman, in his work on Executions, sec. 215, says : "A *vendi.* confers no power or authority on an officer which he did not possess under the execution. It only commands him to do what he could have done under the execution. The execution is the effective writ, and the officer may sell under it without a *vendi.*"

The effect of a sale under this writ is the same as though it had been made under the original writ before its return day. The lien of the original writ and levy continues. The *vendi.* creates no lien and gives no authority, and the sale, when made, relates back to the levy of the execution. By it the officer is ordered to complete what he had begun under the *fieri facias.* Freeman on Executions, *supra;* Herman on the Law of Executions, *supra; Bellingall* v. *Duncan*, 3 Gilm. 477 ;

*Taylor* v. *Mumford*, 3 Humph. 66; *Holmes* v. *McIndoe*, 20 Wis. 657; *Doe* v. *Hays*, 4 Ind. 177; *Badham* v. *Cox*, 11 Ired. 460. At common law, it applied only to the sale of goods and chattels, and when a writ of *fi. fa.* had been issued, and the sheriff returned that he had levied but the goods remained in his hands for want of buyers, a writ *venditioni exponas* might be sued out to compel a sale of the goods at any price. (Bouvier's Law Dic. *supra;* Tidd's Prac. 1068.) This was the recognized and known office of this writ when the legislature enacted the statute under consideration.

This court, in *Dobbins* v. *First National Bank of Peoria*, 112 Ill. 553, in commenting on this provision, held that thereby the legislature have extended a lien, by virtue of the levy of the execution, during the year succeeding the seven years. In the opinion of the court, in that case, it is said: "It seems to follow, that if execution be issued within a year from the entry of judgment, the judgment becomes a lien for seven years; and if land be levied upon by a valid execution within seven years, it may be sold upon a *venditio rei exponas,*— with like effect either before the seven years (expires,) or at any time within one year after the end of the seven years." And in discussing the question of how long the lien created by the levy of an execution lasts, the court say: "The statute does not expressly say; but when, in that connection, it is said that real estate levied upon within seven years after the judgment becomes a lien, may be sold at any time within one year after the expiration of said seven years, it is plain this lien of an execution was intended, in such case, to be kept alive for that time, to make such lien effective."

We are aware that this precise question was not before the court in that case, but we think the reasoning by which the conclusion last quoted was reached is satisfactory. The legislature have not, by any words in the act, attempted to define the character or office of the writ, or to extend or enlarge its powers, and it will require no citation of authorities to sus-

tain the position that the legislature will be presumed to have understood the purpose, function and character of the writ *venditio rei exponas,* and to have adopted it with reference to its well defined character and powers. In this case the levy was made within seven years from the rendition of the judgment, and the sale made within the lifetime of the execution, by the sheriff, without the compulsory process, the sole office of which, if issued, would have been to compel him to do what he was already willing to do,—that is, to complete the execution of his *fi. fa.* by the sale of the property levied upon. The return day of the writ had not elapsed, and, as we have seen, the lien created by the levy was continued to make it effective. To hold, under such circumstances, that the legislature intended, by the language employed, to require the return of the execution simply for the purpose of suing out a *venditio rei exponas,*—to put the execution again in force,—"to compel the officer to do what he might have done under the execution before the return day,"—is to overlook and disregard the substance of what the legislature sought to accomplish by the enactment of this statute, and give effect to the mere form by which it may be accomplished. No doubt many cases will arise where the sheriff, for some cause, may refuse or be unable to sell under the execution, and the suing out of the compulsory writ become proper and necessary; but we are of opinion that under the facts in this case the sale might lawfully be made by the sheriff under the execution, without the formality of returning it and the suing out of the writ *venditio rei exponas,* and that having done so, a deed thereunder, otherwise valid, will convey the title of the defendant in execution.

The circuit court therefore erred in refusing to admit the sheriff's deed offered by appellant in evidence, and for this error the judgment must be reversed, and the cause remanded to the circuit court for further proceedings.

*Judgment reversed.*